[Civil No. 312.   Filed January 16, 1892.]

[29 Pac. 9.]

# KANSAS CITY MINING AND MILLING COMPANY, Plaintiff and Appellant, v. JAMES W. CLAY, Defendant and Appellee.

1. PUBLIC LANDS—PRE-EMPTION—PATENTS—SALINES AND MINES NOT INCLUDED—SEC. 2258, REV. STATS. U. S., CONSTRUED.—Under section 2258, Revised Statutes of the United States, providing that lands, upon which are situated any "known salines or mines," shall not be subject to pre-emption, the land department has no power to convey the legal title to known mines by patent obtained under pre-emption entry.

2. SAME—SAME—SAME—SAME—PATENT NOT CONCLUSIVE AS TO MINES. —Whether or not land contains "known salines or mines" is not a fact which is required to be shown at the time of making a pre-emption entry, and the patent is therefore not conclusive thereon.

3. SAME—SAME—EJECTMENT—COLLATERAL ATTACK ON PATENT—CHARACTER AS CONVEYANCE OF KNOWN MINES.—When one, claiming under a patent issued upon a pre-emption, brings ejectment to recover a mine within the boundaries of the land granted, the defendant may attack the patent collaterally by proof that mines were known to exist at the time of its issuance, and thereby defeat its character as a conveyance of such mines.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yavapai. James H. Wright, Judge. Reversed.

The facts are stated in the opinion.

Herndon & Hawkins, Wilson & Norris, and E. M. Sanford, for Appellant.

E. Burgess, and Baldwin & Johnston, for Appellee.

SLOAN, J.—James W. Clay, the appellee herein, brought suit against the Kansas City Mining and Milling Company, appellant, for the recovery of land described as the south ½ of northwest ¼, of section 26, township 13 north, range 2 west, Gila and Salt River meridian, and for damages for the value of certain ores taken from said land by appellant, and for an injunction to restrain the working of certain mineral-bearing veins or ledges thereon, and taking ores therefrom by appellant. Appellant, answering the complaint, set up these several matters in defense of the action: (1) That, as to so much of said land sued for as is covered by two mining locations known, respectively, as the "Silver King" and "Western Extension of Silver King," appellant pleaded "Not guilty." As to the remainder, he entered a disclaimer. (2) That, as to so much of said land as is contained within the boundaries of said mining location, he alleged that the same was not agricultural land, but was more valuable for its minerals than for other purposes; that at the time plaintiff and his grantors entered the same under the pre-emption laws of the United States, and before patent issued to the same, said land was known to contain valuable minerals, and had in fact been located under the mineral laws of the United States, and opened up, and shown to contain ores of great value. (3) That appellant holds said land covered by said locations by virtue of a compliance with the mining laws of the United States. The case having been tried in the court below by a jury, a verdict for plaintiff (appellee herein) was returned, and judgment entered in accordance therewith. At the trial, appellee, to establish his right to recover, put in evidence certain deeds, by which he deraigned title to the land described in his complaint from one Blackburn, who, in 1879, obtained a patent from the United States to the same, under a pre-emption entry, and also put in evidence this patent. Appellant then offered to prove that at the time of the pre-emption entry by Blackburn, and the issuance of said patent,

there was upon said land a well-defined gold and silver bearing quartz-vein of ore, and that the same was then known to exist, and had been prior thereto located and worked for its minerals. The exclusion of this evidence by the trial court is relied upon by appellant as the principal assignment of error.

The first question suggested by this assignment is, when and under what state of facts may a patent of the United States to land obtained under the pre-emption laws be collaterally impeached in an action at law? The general rule, as laid down by the authorities, as to the conclusiveness of a patent in such a case seems to be that all persons whatsoever, in an action at law, are concluded by the patent upon all matters and things over which the land-officers of the government have jurisdiction, and are authorized to exercise their judicial functions. "The judgment of the land department of the government upon all matters properly determinable by them is conclusive, when brought to notice in a collateral proceeding, and can be assailed only by a direct proceeding for its correction and annulment." *Smelting Co.* v. *Kemp,* 104 U. S. 647; *Steel* v. *Smelting Co.,* 106 U. S. 450, 1 Sup. Ct. Rep. 389. In the case last cited, Justice Miller, delivering the opinion of the court, quotes with approval the general doctrine as expressed in *Johnson* v. *Towsley,* 13 Wall. 72: "That, when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others, and that the action of the land-office in issuing a patent for any of the public land subject to sale, by pre-emption or otherwise, is conclusive of the legal title, must be admitted, under the principle above stated; and in all courts, and in all forms of judicial proceedings, when this title must control, either by reason of the limited powers of the court or the essential character of the proceedings, no inquiry can be permitted into the circumstances under which it was obtained." This unassailable character of a patent of the United States applies only in so far as the land department has jurisdiction and authority to act. It is well settled, in repeated decisions of the supreme court of the United States, that, if the land department exceeds its jurisdiction in issuing a patent to land

not the subject by it of sale or disposal, this may be shown in an action at law to defeat its operation and annul its character as a conveyance. In *Steel* v. *Smelting Co.,* cited above, this language is used: "It need hardly be said that we are speaking of a patent issued in a case where the land department had jurisdiction to act; the lands forming part of the public domain, and the law having provided for their sale. If they never were the property of the United States, or if no legislation authorized their sale, or if they had previously been disposed of, or if they had been reserved from sale, the patent would be inoperative to pass the title, and objections to it could be taken on these grounds at any time and in any form of action."

It is readily apparent from these general principles just stated that the difficulty is in applying them to particular cases, and in formulating such a rule as will make clear whether any given state of facts brings the case within the general doctrine as to the conclusiveness of a patent, or brings it within one of the exceptions stated above; and this brings us to the next question suggested by the assignment: Was the patent to Blackburn, obtained under the pre-emption laws, open to attack in this suit by proof that, at the time of its issuance, there were, within the land which it covered, "known mines," valuable for their minerals, and thus to avoid its effect as a conveyance of the legal title of the government to so much of the land as was included within the mining locations claimed by the appellant? The position taken by the counsel for appellant is that the effect of the exemption of "known salines or mines" in the pre-emption act is to wholly reserve such lands from sale, and thus to limit the power of the land department to pass title to the same under the provisions of the pre-emption act. On the other hand, it is contended by the counsel for appellee that the effect of the exemption is simply to require the land department, by proof, in its judicial character, before issuing a patent, to ascertain whether mines are known to exist within the boundaries of the claim, and that the action of the department in issuing a patent is as conclusive upon that point as upon other questions of fact upon which the department is required to pass in issuing a patent. None of the cases cited by appellant are

directly in point upon the questions presented by these opposing views of the law, in that they were either cases of patents issued by the government where the title to the lands was not in the government at the date of issuance, or where the lands had been reserved from sale, and therefore the land department had no jurisdiction over them, or cases involving the construction to be given to the reservation of known mines under town-site acts, and in some instances under placer locations. These cases, however, particularly those in reference to the effect of town-site patents, and also of patents to placer mines, are instructive, in so far as they illustrate and indicate the general policy of the government in reserving valuable mineral lands, known to be such at the date of patent, from the operation of a patent issued in any other method than that specifically provided by Congress for the disposal of its minerals; and we may gather from them, as well as from an examination of the various acts of Congress relative to the disposal of the public lands, to what extent the land department is empowered to act in passing upon the nature and character of land containing minerals, so as to conclude by its action all persons not connected with the original source of title from calling in question, in an action of law, the validity of such patent. Section 2318 of the Revised Statutes of the United States is declaratory of the general policy of the government with respect to her general lands. It reads: "In all cases, lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law." This must be taken, in view of the fact that prior to the act of July 4, 1866, no law authorized the sale or disposal of any mineral lands belonging to the United States, and the further fact that subsequent laws incorporated in the Revised Statutes provide expressly how title to such lands may be acquired, as limiting the power and authority of the land department in disposing of the public lands valuable for minerals to some method and under such conditions as may be specifically pointed out by some act of Congress. Nearly all of what are known as the "Public Land Acts" contain reservations of some description from their operation of lands known to contain minerals of value. Thus, in section 2392 of the Revised Statutes, it is provided that, under the pro-

visions of the town-site act, "no title shall be acquired to any
mine of gold, silver, cinnabar, or copper, or to any valid min-
ing claim or possession held under existing laws." Section
2341 restricts homestead entries to lands upon which "no val-
uable mines of gold, silver, cinnabar, or copper have been dis-
covered." Section 2333 exempts from the operation of the
patent obtained under the provisions of law relating to placer
locations all veins or lodes containing valuable mineral known
to exist at the time of the application for the patent, while
section 2258 provides that lands upon which are situated any
"known salines or mines," unless otherwise specifically pro-
vided by law, shall not be subject to the rights of pre-emption.
So far as the supreme court of the United States has construed
these various provisions of the acts of Congress relative
to mineral lands, it has, it seems to us, from an examination
of the cases, uniformly held them to be a limitation upon
the power of the land department, by patent, to pass title of
any kind, legal or equitable, to lands reserved from operation
of the acts by which title to lands may be acquired by reason
of their known mineral character. These cases are princi-
pally of two classes,—those known as the "Town-Site" and
those known as the "Placer Mine" cases. The first construe
the reservation contained in section 2392, and the latter
the exemption contained in section 2333 of the Revised Stat-
utes. So far as we have been able to find, the effect in limiting
the power of the land department of the exemption from the
operation of the homestead law, found in section 2341, and
also the exemption from the operation of the pre-emption
law, found in section 2258 of the Revised Statutes, now un-
der consideration, has never been judicially determined by
that court. An examination, however, of these Town-Site and
Placer Mine Cases leads to the conclusion that the same rules
would apply in the construction of the latter section as in
the former.

The leading case under the town-site act is that of *Deffeback*
v. *Hawke,* 115 U. S. 404, 6 Sup. Ct. Rep. 95. In this case the
plaintiff, who had obtained patent to certain mineral lands
in Dakota under a placer mining location, brought suit in
ejectment against the defendant, who claimed a right of
possession to part of the premises included in the patent by

virtue of an entry under the town-site act made prior to the placer location and patent. The court held that although an entry under the town-site act might be made of lands containing valuable minerals, discovered to be such after the entry for town-site purposes, yet, such entry, and the patent obtained thereunder, would, under the general policy of the law with reference to mineral lands, and particularly under section 2392 of the Revised Statutes, exempting from the provisions of the act any mine of gold, silver, cinnabar, or copper, confer no title to any lands contained within its limits, known at the time to be valuable for their minerals or discovered to be such before their occupation or improvement for residence or business under the town-site title. In a more recent case—that of *Davis's Adm.* v. *Weibbold,* reported in 139 U. S. 508, 11 Sup. Ct. Rep. 628, which was an action brought by Weibbold, plaintiff, to recover certain land situate in Silver Bow County, Montana, embraced in a patent to a lode-mining claim issued in 1880, against the defendant, Davis, who held possession and claimed title to the same under a subsequent patent to the town-site of Butte City, issued in 1877 to the probate judge as trustee for the use of the occupants of said town-site—the question was presented whether proof was admissible to show that at the time said patent issued to said town-site the premises embraced in the lode claim were not known to contain valuable minerals, and thus to establish that the town-site patent carried complete title to the land embraced therein, notwithstanding it was subsequently found to contain minerals of value. In passing upon this question, the court, while admitting that the language of the declaration in the town-site act, "that no title shall be acquired to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws," was quite broad enough to constitute a reservation to the United States in the lands sold of mines known at date of patent to exist therein, as well as those subsequently discovered, yet reiterate and adhere to the doctrine expressed in *Deffeback* v. *Hawke,* that the reservation must be read "merely to prohibit the passage of title under the provisions of the town-site laws to mines of gold, silver, cinnabar, and copper, which are known to exist on the issue of the town-

site, and to mining claims and mining possessions in respect
to which such proceedings have been taken under the law or
the custom of miners as to render them valid, creating a
property right in the holder, and not to prohibit the acquisi-
tion for all time of mines which then lay buried in the depths
of the earth." As a necessary sequence to the view thus ex-
pressed, as to how far the reservation of mineral lands
from the act should be held to extend, the court held that
whenever the presumption arises from the issuance of a
patent to a mine embraced in a prior town-site patent that
the mine was known to exist, and the land known to be valu-
able for its minerals at the date of the patent, proof rebutting
this presumption is admissible, thus recognizing that an issue
might arise in an action at law as to whether a patent to
a town-site carries with it any title to mineral lands em-
braced within its boundaries. A very instructive case, and
the leading one upon the subject of exemption under "placer
mining" locations and entry made by section 2333, is that of
*Reynolds* v. *Mining Co.,* 116 U. S. 687, 6 Sup. Ct. Rep. 601.
In this case plaintiff sought to recover possession of a certain
lode or vein containing minerals in the possession of the de-
fendant. Plaintiff claimed title as the patentee of certain
placer patents covering the said mineral-bearing vein in pos-
session of the defendant, who relied wholly upon the weakness
of plaintiff's title, by reason of the fact that said vein or lode
was known to exist at the date of the issuance of said patent,
and was therefore exempted by act of law from its operation
as a conveyance from the government. This position of de-
fendant was sustained by the court, and the doctrine clearly
announced that a placer patent conveyed no title to lodes or
veins within its boundaries, known to exist at the date of is-
suance, but only to such lodes or veins whose existence at the
date of patent were unknown, leaving a court of law to de-
termine the existence of the fact whether or not such lodes or
veins were known to exist at the date of such patent. It was
argued, however, that the latter and other similar cases are
not to be taken as authorities in this case, inasmuch as patents
to placer claims specifically and in terms exempt all lodes,
veins, or other mineral-bearing quartz which are claimed or
known to exist at the date of the patent from its operation as

a conveyance. The court, however, in the last-mentioned case, say that this exception in the granting clause of a placer patent only gives expression to what was evidently the intention of Congress in the statutes, and, in effect, whether such exception appeared in the patent or not, such veins, lodes, or mineral-bearing quartz would be excluded, as much as if described in clear terms. In what particular the law with respect to patents to placer claims differs in this regard from patents of pre-emption claims, it seems to us, is not apparent. In the former case the statute declares that ''where a vein or lode, such as is described in section 2320 was known to exist within the boundaries of a placer claim an application for a patent to such placer claim, which does not include an application for the vein or lode claim, .shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of the vein or lode in the placer claim is not known, a patent for the placer claim shall convey all valuable minerals and other deposits within the boundaries thereof.'' In the latter case, ''known salines or mines'' are declared by the statute to be exempt from the operation of the pre-emption law. It is evident, it seems to us, from these various provisions of the statute, that Congress intended equally to take it out of the power of the land department in the one case to convey by patent even the legal title to veins or lodes known to exist within the boundaries of a placer claim, and in the other known mines by patent obtained under a pre-emption entry.

An examination of the pre-emption act will show the weakness of the contention that the existence or non-existence of known mines upon the land claimed under a pre-emption entry is a fact for the determination of the land-officers at date of final proof, and that their action in issuing patent is conclusive upon that fact. It will be observed that the pre-emption law, whatever may be the practice of the land department in requiring *ex parte* proof of the non-mineral character of the land, does not make it the duty of the land-officers to take proof at the time of filing the declaratory statement, or at the time of final proof and payment, to ascertain whether ''known salines or mines'' exist within the boundaries of the claim, as

a prerequisite to his right to obtain patent to the same. It does require proof of the claimant's qualifications to obtain land under the act, of his good faith, and also of the settlement and improvement of the land in question.· Such, in substance, are the facts required to be shown by the claimant, and as to these the patent is conclusive in an action at law. Upon these facts depended the personal right of the claimant to require a conveyance from the government upon payment of the amount required, provided the law gave him the right to purchase the particular land included in his application. Upon the existence of the fact whether or not the land contained "known salines or mines," by section 2258, depended the right to purchase that particular piece of land, and the right of the land department to sell it. If it was the policy of the law to leave the determination of both these questions to the land department, from the *ex parte* proof of the claimant, it seems strange that nothing is said in the act as to proof of the latter. We cannot, therefore, assent to this view that it is a fact to be shown at the time of the application, that the land does or does not contain known mines, and that the patent is conclusive upon that point.

We conclude, therefore, that the exemption of "known salines or mines," under the pre-emption law, should be construed as preventing the obtaining, under the act, of any title to such mines as are known to exist at the date of application for patent, and hence as constituting one of the exceptions to the conclusiveness of a patent to the public domain mentioned by the court in *Smelting Co.* v. *Kemp,* for the want of authority or power in the land department to pass by preemption patent the title of the government to such mines. The title remaining in the United States, it follows that, when such patent has issued, it may be collaterally attacked in an action at law by proof that such mines were known to exist at the time of issuance of patent, and its character as a conveyance of such mines be defeated.

For the reasons stated, we hold, therefore, that the court erred in not permitting the defendant to prove that at the time of the application for patent by Blackburn, under his pre-emption entry, there was upon the land described in the patent a known mine of gold and silver-bearing quartz, and

that the same had been prior thereto located and worked for its minerals. Judgment is accordingly reversed, and the case remanded for a new trial.

Gooding, C. J., and Kibbey, J., concur.