Reed, P. J.,
delivered the opinion of the court.
The abstract in this case fails to furnish the necessary information, and I have been compelled to resort to the record for nearly all the information I have been able to obtain. On all important questions of fact in regard to the discovery, location and occupation of the mine by the respective contestants, there is no abstract of the evidence whatever. It is said “ that plaintiff, to maintain the issues on his part, introduced evidence tending to prove,” etc. Then follows a schedule of facts which, if proved, would clearly establish every substantive fact necessary to a possessory title under United States and state statutes, but we are not informed whether any such facts were established, — only that the evidence had a tendency in that direction.
As the plaintiff appealed and furnished the abstract, we might question the statements and consider counsel biased, were it not for the fact that when they come to the evidence of defendants the same language is used, and the same enumeration of necessary facts that would establish the same kind of a title, and it is said, in an eminently unselfish and disinterested manner, that the evidence of defendants “ tended to prove ” them. The testimony clearly established the iden *311 tity of the property of the two adverse claimants. So, if the language means anything, it established irrefragable title of both parties, to the same property, by discovery and occupation.
For lack of an abstract, I have been carefully through the bill of exceptions to ascertain in regard to the discovery shafts of the two properties, and find that they are identical. One William Messenger, it appears from the evidence, made the discovery in 1882 or 1883 ; drove an adit into the side-hill, which, at the time of his death, in 1885, had been driven fifteen or twenty feet, and it was called the “Big Lode.” It is claimed that by his death the property was abandoned.
On the 19th day of November, 1885, defendants claim to have taken possession, made a discovery, relocated as the “ Lady B.,” remained in the actual occupancy of the property, performed the annual assessment work of $100 each year, including the year 1890. By the evidence of plaintiff, he entered upon it as abandoned and forfeited property in February, 1886, did his work in the same hole occupied by -the defendants, and formerly by Messenger, relocated it as the “ Tywarnhail Lode,” and from that date on was in the actual possession and occupancy of the property up to the time of bringing this suit, and had annually performed the work of $100 up to that time.
There was no conflict of testimony or contradiction in regard to discovery, occupation and expenditure of money. The work of both plaintiff and defendants appears to have, been prosecuted, with the exception of a shaft twelve or fifteen feet deep, on the west end of the claim, sunk by the defendants, in the Messenger adit, and in a winze sunk by plaintiff near its mouth. By reason of the double occupancy and double assessment work, the adit appears to have gained some distance into the mountain. So far as shown by the evidence, the title of each was impregnable, and the actual occupancy and continual possession of each unquestioned.
Here we have an example of an exclusive holding and *312 occupation, not only of the same property, but of the same hole, by each of the contending parties, for years, not only without force, violence or ill feeling, but apparently without the knowledge of either that the other was in possession. Such being the facts, were there no other questions presented, it would seem to be dependent upon the dates of entry,— priority; but there are some legal questions presented that require consideration. I will first briefly examine a question, apparent upon and presented by the pleadings of the plaintiff, not presented by counsel. In the complaint he counts upon his title to the Tywarnhail lode by location, occupation, etc., from Febi’uary, 1886, to date of bringing suit; the defexxdants answer setting up the same kind of title, actual possession and occupation fx’oxn Novembei’, 1885, thus antedating the plaintiff some xnonths. In reply, the plaintiff alleges abandonment and forfeiture by the defexidants, and a title in himself after such ioifeiture, and to the same property, under the name of the “ Moonlight Lode,” acquired January 1, 1890.
These pleadixigs are inconsistent, if not incompatible and contradictory. The reply would seem to be an admission of the original title of defendants as alleged in the answer, and at the same time contradictory of the complaint, which alleges continual possession of the property and occupation by himself at the time the alleged forfeiture of defendants occurred. I am not aware that rules of common law pleading are so changed by the code as to make them inapplicable in proceedings of this kind. In 1 Chit. Pl. 674, it is said: “It is also a settled rule that the replication must not depart from the allegations in the declaration in any material matter. * * * A departure in pleading is said to be when a party quits or departs from the case or defense which he has first made and has recourse to another. It occurs when the replication or rejoinder, etc., contains matter not pursuant to the declaration or plea, etc., and which does not support and fortify it.” Authorities in support of the proposition are almost innumerable. Counsel for- defendant upon the trial took no notice *313 of the irregulaiity, and no question in regard to it is presented in this court, but as the case will go back for retrial, we call attention to it, so that the pleadings may be reformed before a subsequent trial.
The first contention of appellant is that the court erred in refusing to allow the plaintiff to prove that the discovery of the Lady B. was within the patented limits of the town of Black Hawk. All the evidence shows that the existence of a mineral bearing vein at the place the discoveries were made was known long previous to the application for or receipt of the title by the town. That, under the statute, was sufficient. The town took no title.
The second contention is that the court erred in refusing to admit evidence that the discovery of the Lady B. was within the limits of the Thanksgiving lode, patented in 1879. It appears from the record the discovery shafts of both claimants were identical, or nearly so. The evidence should have been admitted, and the jury instructed that if they so found the fact, in regard to both, that neither could recover. Title can only be acquired by discovery and occupation on the unoccupied lands of the government. No title by discovery can be had by an entry within the surface lines of patented lands, and if the evidence established the fact of the patent of the Thanksgiving lode in 1879, both alleged titles having originated after that date, if the respective1 alleged discoveries were within the patented limits, neither could take title. The statute provides, in this class of cases, that the jury may find for either or neither claimant. The evidence should .have been admitted, and, if warranted by the evidence, such instruction should have been given.
It is next contended that the court erred in refusing to give the following instruction asked by the plaintiff:
“ The court instructs the jury that the original location certificate of the Lady B. lode having been excluded from evidence, they must rely upon the amended location certificate filed February 18, 1888, and if you believe that before that time the plaintiff had made a valid location of the *314 Tywarnhail lode mining claim, and has since maintained it as a good mining claim, then he is entitled to a verdict for the ground in controversy; ” — and in giving the following at the request of the defendant:
“ The court instructs the jury that if you believe from the evidence that defendants or their grantors marked the location of the Lady B. lode in September, 1885, and complied with the law concerning the location of mining claims, as explained in these instructions, but did not file an original location certificate or described the ground with reasonable certainty, still if you believe from the evidence that defendants marked said ground, or staked and kept possession of the same, and in January, 1888, filed an amended location certificate correctly describing the same ground as originally staked, then said amended location certificate cuts out the plaintiff as an intervening claimant, and such intervenor, the plaintiff, should be regarded as a trespasser, who could not initiate any rights in or to the ground staked by defendants.”
The record contains no copy of the original certificate which was excluded, and without it we find it impossible to determine in regard to the instruction refused and the one given. If it was so defective as to absolutely fail to comply with the statutory requirements and define the claim, it was void, and the second certificate was not amendatory, so as to date back to the date of the first, and there was no location of the claim until 1888 by the appellees, and appellant having entered and located the property in 1886, and there was no forfeiture or abandonment, appellees could acquire, no right to the property. If, on the other hand, the certificate was not void, but only lacking in technical detail, and was capable of amendment, then the second would be considered amendatory, and would relate back to the date of the first, and both should be regarded as one, and both put in evidence. Without an opportunity for inspection of the paper, it is impossible to determine whether the court erred *315 in holding the original certificate void or in giving or refusing the instructions.
The judgment must he reversed and cause remanded for a new trial. If one be had, and the case should again come to this court, we sincerely hope the record and the abstract will present it in such shape as to relieve us of the great embarrassment we experience in the present instance.
> Reversed.