[Civil No. 971. Filed May 25, 1907.]

[90 Pac. 333.]

OLD DOMINION COPPER MINING AND SMELTING COMPANY, Plaintiff and Appellant, v. NELLIE HAVERLY, Defendant and Appellee.

1. PUBLIC LANDS—LAND OFFICERS' DECISIONS—CONCLUSIVE.—In the absence of fraud, imposition or mistake, a decision of the United States Land Department officials upon a contest to determine whether land taken up under a homestead entry was mineral and not agricultural is binding on the courts of the country, and not subject to collateral attack in ejectment by either party to the contest.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Gila. Frederick S. Nave, Judge. Reversed and remanded, with direction to enter judgment for plaintiff.

In 1883 one Andre Maurel went upon unoccupied public land of the United States in Gila county, Arizona, and in conformity with the laws then in force staked out and located a tract of one hundred and sixty acres of land, and filed in the public records of the county a notice that he had settled upon and improved the said premises, with a view of availing himself of the homestead or pre-emption laws of the United States. Some years thereafter a man named Tidwell built a house upon unoccupied public land immediately south of Maurel's premises, as designated by his corner stakes and boundary line, and a daughter of his named Nellie, who lived with him, afterward married a man named Haverly, and continued to live in the same house. In 1900 one William J. Roberts located a lode mining claim south of Maurel's homestead premises, including within its surface boundaries the ground on which the Haverly house was standing. In December, 1900, Roberts gave a quitclaim deed to Mrs. Haverly, releasing and quitclaiming the surface ground on which the house was standing, but especially reserving the minerals and rights of mining under said surface. In 1901 a government survey was extended over these lands, and at once thereafter Maurel entered the land as a homestead, and applied for patent. The survey established the south line of the legal subdivisions, practically covered by the possessory right there-

XI Ariz.—16

tofore held by Maurel, some distance south of the line established by Maurel in 1883, and, when entry and application for patent was made, it was made by the legal subdivisions as established by the government survey, and included within its external boundaries the mining claim located by Roberts, on which were the house and premises occupied by the said Nellie Haverly. Nellie Haverly and the grantee of Roberts (who had sold the mining claim) contested the issuance of a patent to Maurel for that part of the land covered by the mining claim on the ground that the land was mineral, and not agricultural, and therefore could not be patented as a homestead, and that it had been, prior to the homestead entry, segregated from the public domain by the mineral location of Roberts. The officers in the local United States Land Office decided against the contestants, and on appeal to the Commissioner of the General Land Office their decision was affirmed, and, on further appeal to the Secretary of the Interior, the decision of the commissioner was affirmed, after which the final receiver's receipt for the homestead entry was, on July 7, 1904, given to Maurel, and a patent for the land was, on the second day of May, 1905, issued to him. On the thirteenth day of April, 1905, Maurel sold and conveyed to the appellant herein the south part of said homestead premises, and on the eighteenth day of April, 1905, the appellant brought an action in ejectment against Nellie Haverly and others for the possession of the Haverly house and premises. The other defendants disclaimed, and Nellie Haverly filed her answer May 31, 1905, in which she admitted the corporate character of the plaintiff, and denied its ownership of the premises in dispute, and further denied that she wrongfully withheld possession thereof from plaintiff, or was wrongfully or unlawfully in possession of the same. On December 19, 1905, when the case came on for trial, Nellie Haverly filed an amended answer. In paragraphs 6 to 14, inclusive, of the amended answer, she alleged the location of the premises by Maurel in 1883, his holding the same as a possessory right thereafter as hereinbefore stated, and that the premises thus held did not include the premises occupied by her; the location of the mining claim in 1899 by Roberts, and his quitclaim deed to her of the surface ground occupied by her house; the mineral character of the land, and Maurel's knowledge of such mineral character; the knowledge of the plaintiff of these facts at the time it became Maurel's grantee; the extension

southward of the south line of Maurel's premises, in 1901 after the survey, to the south boundary line of the legal subdivisions in which such possessory right had been located, and the inclusion thereby within the boundary lines of the said homestead entry of the premises in dispute after their location as a mining claim by Roberts; the occupancy of the premises by her, and the value of the improvements thereon. On the same day this amended answer was filed the plaintiff filed and presented a motion to strike out paragraphs 6 to 14, inclusive, on the ground of the irrelevancy of the allegations contained in said paragraphs to any issue in the action, and also a general demurrer to them on the ground of their insufficiency to constitute a defense. The motion and the demurrer were on the same day argued, and the court denied the motion, and overruled the demurrer. Plaintiff then filed its motion for a continuance, supported by the affidavit of Maurel, grantor of the land, to the effect that the premises in dispute were included in the homestead patent issued by the United States to the affiant on May 2, 1905; that both Nellie Haverly, the defendant, and J. C. Evans, mentioned in the defendant's answer as the grantee of Roberts, had contested said homestead entry for said land in the United States Land Office; that in said contest Nellie Haverly relied upon the same claim set up by her in paragraph 9 of her answer filed in this case, and said Evans relied upon the mineral location referred to in defendant's answer, being the same land that was attempted to be located by Roberts, the grantor of said Evans and Haverly, under which location the defendant claims in this action her right and title to the premises in dispute; that in said contest case the officers of the land office rendered separate decisions based upon the evidence then and there produced, which decisions were adverse to the contestants, and which are conclusive upon the said Nellie Haverly as against her contention in said amended answer that the lands covered by said mineral claims are mineral lands, and that said decisions were afterward confirmed by the Commissioner of the General Land Office and by the Secretary of the Interior; that certified copies of the decisions of the land office are material as evidence in this case, and if plaintiff is given time to receive said copies, it will prepare and file a plea in bar to this portion of defendant's answer; that due diligence has been used to obtain said certified copies; that plaintiff was informed by wire that the certified copies were

then being prepared in the United States Land Office; that the same could not be received in time to be used at the trial unless the case be continued for a term of days sufficient to enable plaintiff to receive them from the land office at Phœnix; and that such testimony cannot be obtained from any other source. The court overruled and denied the said motion for continuance upon the ground that under the holding of the supreme court of Arizona in *Kansas City M. M. Co.* v. *Clay,* 3 Ariz. 326, 29 Pac. 9, such decisions could not be within the jurisdiction of the land office, and that it seemed clear that the court would have to exclude this testimony, if offered, whereupon the case was immediately called for trial, a jury was impaneled, and upon their verdict a judgment was rendered for the defendant, a motion for a new trial was denied, and an appeal has been brought to this court.

George J. Stoneman, and Herring & Sorin, for Appellant.

The homestead patent issued by the United States to Andre Maurel conveyed the legal title, and is impregnable to collateral attack. *Quinby* v. *Conlon,* 104 U. S. 420, 26 L. Ed. 800; *Barden* v. *Northern Pac. R. R. Co.,* 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992; *Heath* v. *Wallace,* 138 U. S. 573, 585, 11 Sup. Ct. 380, 34 L. Ed. 1063; *French* v. *Fyan,* 93 U. S. 169, 23 L. Ed. 812; *Noble* v. *Union River Logging Co.,* 147 U. S. 167, 13 Sup. Ct. 271, 37 L. Ed. 123; *Erhardt* v. *Hogaboon,* 115 U. S. 67, 5 Sup. Ct. 1157, 29 L. Ed. 346; *Steel* v. *St. L. Smelting & Refining Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; *St. L. Smelting & Refining Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; *United States* v. *Winona & St. P. R. Co.,* 67 Fed. 948-957, 15 C. C. A. 96.

The decisions of the land department upon matters of fact, such as the character of the land for which a patent is sought, are, in the absence of fraud, conclusive and binding upon the courts of the country. *Shaw* v. *Kellogg,* 170 U. S. 312, 18 Sup. Ct. 632, 42 L. Ed. 1050; *Barden* v. *Northern Pac. R. Co., supra; Johnson* v. *Drew,* 171 U. S. 93, 18 Sup. Ct. 800, 43 L. Ed. 88; *Heath* v. *Wallace, supra; Catholic Bishop Nesqually* v. *Gibbon,* 158 U. S. 155, 15 Sup. Ct. 779, 39 L. Ed. 931; *Steel* v. *Refining Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; *United States* v. *Budd,* 144 U. S. 154, 12 Sup. Ct. 575, 36 L. Ed. 388; *Lee* v. *Johnson,* 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570; *Vance* v. *Burbank,* 101 U. S. 514, 25 L. Ed. 929; *Moss* v. *Dowman,* 176 U. S. 413, 20 Sup.

Ct. 429, 44 L. Ed. 526; *Carter* v. *Thomson,* 65 Fed. 329; *Gardner* v. *Bonestell,* 180 U. S. 362, 21 Sup. Ct. 399, 45 L. Ed. 574; *Quinby* v. *Conlan, supra; Buena Vista Petroleum Co.* v. *Tulare Oil & Min. Co.,* 67 Fed. 226; *Scott* v. *Lockey Inv. Co.,* 60 Fed. 34; Black on Judgments, sec. 530; *Jeffords* v. *Hine,* 2 Ariz. 162, 11 Pac. 351; *Ferry* v. *Street,* 4 Utah, 521, 7 Pac. 712, 11 Pac. 571; *Wiseman* v. *Eastman,* 21 Wash. 163, 57 Pac. 398.

E. J. Edwards, for Appellee.

The homestead patent issued to Andre Maurel, purporting to cover the land in dispute, conveyed no title to the land in controversy, said land being at the time known mineral land. *Iron S. M. Co.* v. *Mike Starr G. & S. M. Co.,* 143 U. S. 394, 12 Sup. Ct. 543, 36 L. Ed. 201; *Garrard* v. *Silver Peak M. Co.,* 94 Fed. 983, 36 C. C. A. 603; *Deffeback* v. *Hawke,* 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423; *Silver Bow Min. Co.* v. *Clark,* 5 Mont. 378, 5 Pac. 570; *Talbott* v. *King,* 6 Mont. 76, 9 Pac. 434; 2 Lindley on Mines, 2d ed., sec. 720, p. 1304.

The decision of the land department in granting patent for placer mining claims, townsites, homesteads, etc., is not conclusive of the fact that there were no known lode claims existing at the time of the issuance of patent. *Moyle* v. *Bullene,* 7 Colo. App. 308, 44 Pac. 69; *Butte City Smoke-House Lode Cases,* 6 Mont. 397, 12 Pac. 858; *Kansas City M. & M. Co.* v. *Clay,* 3 Ariz. 326, 29 Pac. 9; *Deffeback* v. *Hawke,* 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423.

DOAN, J.—The assignments of error in this case, more than thirty in number, present many questions of interest, but the one question that is controlling in the case, and that will determine, or render unnecessary, the consideration of the others, is whether the finding of fact relative to the character of this land made by the officers of the land department in a contest brought by the defendant herein, and the owner of the mining claim under which she claims title, upon the application for patent for the said tract under homestead entry thereof in 1901 in which the land was claimed by one party to be mineral and by the other agricultural is conclusive, or whether the patent issued to the agricultural claimant on such finding by the department can be collaterally attacked in this case, and the same issues of fact retried in the district court

that were formerly tried before the land department, and secondarily, whether the decision of this court in the Clay case is controlling in the determination of this question.

The Secretary of the Interior is charged with the supervision of the public business of the United States relating to the public lands, including mines. Rev. Stats. 441 (U. S. Comp. Stats. 1901, p. 252). The Commissioner of the General Land Office is required to perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and also such as relate to the issuing of patents for all grants of lands under the authority of the government. Rev. Stats. 453 (U. S. Comp. Stats. 1901, p. 257). The land department of the United States then, including in that term, the Secretary of the Interior, the Commissioner of the General Land Office, and their subordinate officers, constitutes a special tribunal, under these and other provisions of the laws of the United States, vested with the judicial power to hear and determine the claims of all parties to the public lands it is authorized to dispose of, and to execute its judgments by conveyances to the parties entitled to them. In every case there must, in the nature of things, be a decision of questions of fact and questions of law. A certificate or patent is the record evidence of the judgment of this tribunal, and it necessarily follows that, when such a judgment is rendered in a case within the jurisdiction of the land department, it is, like the judgment of other tribunals, vested with judicial powers, impervious to collateral attack. *United States* v. *Winona & St. P. R. R. Co.,* 67 Fed. 948, 15 C. C. A. 96. The well-settled rule being that the decision of the department, and the patent as the record evidence of that decision, is, in the absence of fraud or imposition, conclusive in a case within the jurisdiction of the department, and there being in the case at bar no evidence or allegation of fraud, it presents the one question of jurisdiction: Did the department have power to issue the patent to Maurel, and jurisdiction to determine the questions upon which its issue depended? The test of jurisdiction is whether the department had the authority to enter upon the inquiry, not whether its determination resulting therefrom was right or wrong.

Revised Statutes of the United States, chapter 5, section 2289 et seq. (U. S. Comp. Stats. 1901, p. 1388),

as amended by Act of March 3, 1891, chapter 561, 26 Stat. 1095 (U. S. Comp. Stats. 1901, p. 1535), which repealed the laws in regard to pre-emption, provides in detail for acquisition under homestead entry of any unappropriated public lands of the United States other than mineral. Revised Statutes of the United States, chapter 6, section 2318 et seq. (U. S. Comp. Stats. 1901, p. 1423), provides for the acquisition of title to unappropriated mineral lands belonging to the United States, and sets forth at considerable length the mode of procedure in acquiring such title. These chapters, which, as amended in 1891, embody the law that was in force in 1899 and thereafter, during which time the proceedings were had in regard to this land, intrust the disposal of both classes of lands to the land department, and provide that the issues of fact that arise in all cases in regard to the patenting of agricultural or mineral lands, whether in a contest between different claimants for agricultural lands, or between different claimants for mineral lands, or in a contest between claimants for the same tract of land, in which one party may claim as agricultural, and the other as mineral, any public land of the United States, shall be submitted to the determination of the proper officials of the land department. Their findings on all issues of fact in cases thus submitted to them for determination are made conclusive the same as judgments of courts of record, and can only be collaterally attacked when invalid by reason of fraud, in their procurement. *Wilcox* v. *Jackson*, 13 Pet. (U. S.) 511, 10 L. Ed. 264; *Barnard's Heirs* v. *Ashley's Heirs et al.*, 18 How. (U. S.) 44, 15 L. Ed. 285; *Lytle et al.* v. *State of Arkansas*, 9 How. (U. S.) 332, 13 L. Ed. 153; *Johnson* v. *Towsley*, 13 Wall. (U. S.) 72, 20 L. Ed. 485; *Warren* v. *Van Brunt*, 19 Wall. (U. S.) 653, 22 L. Ed. 219; *Shepley et al.* v. *Cowan et al.*, 91 U. S. 340, 23 L. Ed 424; *Moore* v. *Robbins*, 96 U. S. 535, 24 L. Ed. 848; *Heath* v. *Wallace*, 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063. There have been cited as exceptions to this rule cases in which patents have been issued for lands that had been previously disposed of, and were, therefore, not, at the date of patent, unappropriated public lands of the United States, and cases in which land patented under certain laws had been theretofore, by act of Congress, specially reserved or exempted from patent under such laws, and therefore the patents issued by the land department had been, in these instances, held to be void as being in excess of its jurisdiction.

In the case of *Kansas City M. & M. Co.* v. *Clay*, 3 Ariz. 326, 29 Pac. 9, to which we have referred as the "Clay case," a tract of land had been pre-empted under sections 2257 and 2258, Revised Statutes of the United States, then in force, which provided: "Section 2257: All lands belonging to the United States, to which the Indian title has been or may hereafter be extinguished, shall be subject to the right of preemption, under the conditions, restrictions, and stipulations provided by law. Section 2258: The following classes of lands, unless otherwise specially provided for by law, shall not be subject to the rights of pre-emption, to wit: Lands on which are situated any known salines or mines." Within the external boundaries of said tract, and before its pre-emption, a gold and silver mine had been located and worked for its minerals, and after the receipt of patent under pre-emption the patentee Clay brought suit against the mining company operating the said mine for the value of certain ores taken from said land by it, and for an injunction to restrain it from working the mineral-bearing veins and ledges, and from taking ores therefrom. The company alleged in its answer that so much of the land as was contained within the boundaries of the two mineral locations on which they were operating the mine at that time had been located under the mineral laws of the United States, and opened up as a mine before the application for pre-emption, and was therefore not conveyed to the patentee, by reason of the provision of section 2258 above cited, which especially provides that "lands on which are situated any known salines or mines shall not be subject to the rights of pre-emption." Nothing in the record indicated that any proceeding was had in the land office to determine the facts relative to the existence or nonexistence of any known mines on this land at the time of the issue of patent. It does not appear that the mining company had knowledge of the application for the issuance of the patent, or that any protest or contest was inaugurated in the land office to put in issue the existence or nonexistence thereof as a question of fact. This court held that: "Upon the existence of the fact whether or not the land contained 'known salines or mines,' by section 2258 depended the right to purchase that particular piece of land, and the right of the land department to sell it. If it was the policy of the law to leave the determination of both these questions to the land department from the ex parte proof of the claimant, it seems strange

that nothing was said in the act as to proof of the matter.
We cannot, therefore, assent to this view that it is a fact to
be shown at the time of the application that the land does or
does not contain known mines, and that the patent is conclu-
sive upon that point.   We conclude, therefore, that the exemp-
tion of 'known salines or mines' under the pre-emption law
should be construed as preventing the obtaining under the
act of any title to such mines as are known to exist at the
date of application for patent, and hence as constituting one
of the exceptions to the conclusiveness of a patent to the pub-
lic domain mentioned by the court in *Smelting Co.* v. *Kemp,*
for the want of authority or power in the land department
to pass by pre-emption patent the title of the government to
such mines.. . . . For the reasons stated, we hold, therefore,
that the court erred in not permitting the defendant to prove
that at the time of the application for patent by Blackburn,
under his pre-emption entry, there was upon the land de-
scribed in the patent a known mine of gold and silver-bearing
quartz, and that the same had been prior thereto located and
worked for its minerals.''   A careful reading of sections 2257
and 2258, Revised Statutes of the United States, and of the
decision as above cited, shows that we held in that case that
in a suit that was brought by a pre-emptor for the value of
the precious metals that had been and were then being taken
from a known mine that was contained within the tract of
land pre-empted, the owner of the said known mine should
be permitted to come into court and prove that the mine from
which such metals were being extracted was a known mine,
and had been located and worked as such for its minerals
prior to its pre-emption, and we held this upon the reasoning
that section 2258 of the statute providing for pre-emption
specially exempted from the right of pre-emption lands on
which were situated any known salines or mines, and we con-
clude from the fact that nothing was said in the act as to
proof in the land department in regard to the existence or
nonexistence of such mines that it was not the policy of the
law to submit that question to the land department for de-
termination, and we therefore construed the express exemp-
tion in the act of such mines from the right of pre-emption
as preventing the obtaining under the pre-emption law of any
title to such mines; and hence, upon it being indisputably es-
tablished that a known mine did exist at the time of patent,
and had been in existence prior to the application for pre-

emption, within the boundaries of the tract of land patented under such pre-emption entry, we held that the officers of the land department had no authority to issue a patent for the land on which the mine was situated, for the reason that it was not subject to entry under the pre-emption law, having been previously reserved, and that this want of power might be proved by the defendant in an action at law. *Morton* v. *Nebraska,* 21 Wall. (U. S.) 660, 22 L. Ed. 639; *Polk* v.*Wendal,* 9 Cranch (U. S.), 99, 3 L. Ed. 665; *Minter* v. *Crommelin,* 18 How. (U. S.) 88, 15 L. Ed. 279.

In a similar case, *Burfenning* v. *Chicago etc. Ry. Co.,* 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175, the United States supreme court, speaking by Mr. Justice Brewer, said: "It has undoubtedly been affirmed over and over again that in the administration of the public land system of the United States questions of fact are for the consideration and judgment of the land department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the land department, one way or the other, in reference to these questions, is conclusive and not open to relitigation in the courts, except in those cases of fraud, etc., which permits any determination to be re-examined. *Johnson* v. *Towsley,* 13 Wall. (U. S.) 72, 20 L. Ed. 485; *St. Louis Smelt. & Ref. Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Steel* v. *St. Louis Smelt. & Ref. Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; *Wright* v. *Roseberry,* 121 U. S. 488, 7 Sup. Ct. 985, 30 L. Ed. 1039; *Heath* v. *Wallace,* 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063; *McCormick* v. *Hayes,* 159 U. S. 332, 16 Sup. Ct. 37, 40 L. Ed. 171. But it is also equally true that when by act of Congress a tract of land has been reserved from homestead and pre-emption, or dedicated to any special purpose, proceedings in the land department in defiance of such reservation or dedication, although culminating in a patent, transfer no title, and may be challenged in an action at law. In other words, the action of the land department cannot override the express will of Congress, or convey away public lands in disregard or defiance thereof. *St. Louis Smelt. & Ref. Co.* v. *Kemp,* 104 U. S. 636, 646, 26 L. Ed. 875, 879; *Wright* v. *Roseberry,* 121 U. S. 488, 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; *Doolan* v. *Carr,* 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844;

*Davis* v. *Wiebbold,* 139 U. S. 507, 529, 11 Sup. Ct. 628, 35 L. Ed. 238, 246; *Knight* v. *United Land Assn.,* 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974.''

In the cases of *Kansas City M. & M. Co.* v. *Clay* and *Burfenning* v. *Railway Co.,* the patents were issued by the land department in excess of its jurisdiction, and were, therefore, invalid, as would have been the judgment of any court of record under similar conditions.   The Clay case is distinctly different from the case at bar; in this the jurisdiction of the department is not questioned, and our rulings in the former case are, for that reason, not determinative of any issues presented in the case now under consideration.

Counsel for the appellee has cited as further exceptions to the conclusiveness of the findings of fact by the land department, and its decision thereon, cases arising under townsite entries, and patents for placer claims.   Section 16, Act of March 3, 1891, chapter 561, 1 Revised Statutes Supplement, 945, provides: ''That townsite entries may be made by incorporated towns and cities on the mineral lands of the United States, but no title shall be acquired by such towns or cities to any vein of gold, silver, cinnabar, copper, or lead, or to any valid mining claim, or possession held under existing law.''   Section 2329, United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1432), provides that: ''Claims usually called 'placers,' including all forms of deposit, excepting veins of quartz, or any other rock in place, shall be subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims.''   Section 2333, United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1433), provides that: ''Where the same person, association or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with a statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof; the remainder of the placer claim or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of two dollars and fifty cents per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section twenty-three hundred

and twenty, is known to exist within the boundaries of the placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim, shall be construed as conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known, the patent for the placer claim shall convey all valuable minerals and other deposits within the boundaries thereof.''

A careful examination of all the cases arising under these laws that have been cited in the briefs of counsel, or that have come to our knowledge, has disclosed no exception to the general rule that a tract of land may be entered and patented as a townsite even though containing mineral lands within its limits. The patent of such townsite is inoperative as to all lands known at the time to be valuable for their minerals, or discovered to be such before their occupation or improvement for residence or business purposes under the townsite patent; but such townsite patent conveys good title to all land within its limits except that known at the time to be mineral, and therefore conveys title to mineral subsequently discovered in lands in possession of a grantee under such townsite patent. *Deffeback* v. *Hawke,* 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423; *Moyle* v. *Bullene,* 7 Colo. App. 308, 44 Pac. 69; *Davis* v. *Weibbold,* 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238; *Butte City Smoke-house Lode Cases,* 6 Mont. 397, 12 Pac. 858; *Talbott* v. *King,* 6 Mont. 76, 9 Pac. 434; *Silver Bow M. & M. Co.* v. *Clark,* 5 Mont. 378, 5 Pac. 570; *Tombstone Townsite Cases,* 2 Ariz. 272, 15 Pac. 26. It is also the rule that a placer patent conveys good title to all land within its limits except any mineral vein or lode that is known to exist within the boundaries of such placer claim at the time application for patent is made, and for which the appellant for such placer patent does not include an application for patent as a vein or lode claim. *Iron Silver M. Co.* v. *Mike & Starr,* 143 U. S. 394, 12 Sup. Ct. 543, 36 L. Ed. 201. It will be observed that patents for townsites and placer claims, either expressly exclude in their terms any conveyance of title to the mineral lands in question, or are issued under a law that provides that, while they convey title to all other lands within their limits, they do not convey title to such mines, mineral lands, or mining claims. The department does not take jurisdiction of the determination of these facts, but issues the

patents with these qualifications, and leaves the conditions that exist at the time of application and patent to be established and the facts relative thereto to be determined thereafter. It is proper, therefore, for the court, in a subsequent action, to determine just what any patent thus issued conveys, or what may, as a matter of fact, be excluded from its conveyance, and while these cases are cited as exceptions to the rule, and are frequently designated as attacks upon the patent, they are not properly such.

The establishment of a valid mining claim within the limits of a townsite patent, or of a known vein or lode within the limits of a placer patent, does not affect either the validity or conclusiveness of such patent, because the department in issuing the patent took no action and made no ruling upon the inclusion in or the exclusion from the said patent of the mine or claim in question, but issued the patent subject to the establishment thereafter in the proper forum of the facts that should determine such inclusion or exclusion, and such action is simply a judicial determination as to the true intent and effect of such patent, and not an attack upon its conclusiveness or validity. In the case of patenting vein or lode mining claims, or homesteads on agricultural lands, the department pursues a different course. In such a case it is vested with and exercises jurisdiction to determine the character of the lands, and, upon such determination, either issues or refuses to issue the patent. And such determination, in the absence of fraud, imposition, or mistake, is conclusive and binding on the courts of the country, and is not subject to review by any other department of the government or any court. *Gardner* v. *Bonestell,* 180 U. S. 362, 21 Sup. Ct. 399, 45 L. Ed. 574; *Heath* v. *Wallace,* 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063; *Jeffords* v. *Hine,* 2 Ariz. 162, 11 Pac. 351; 2 Black on Judgments, 530.

The case at bar presents no exception to the general rule. The patent that was produced by the plaintiff on the trial as the record evidence of the decision by the proper officers of the land department on the issues tendered in the court below was final and conclusive. To hold that the losing litigant before the department could ignore the final judgment of that tribunal, and again submit to a district court and a jury in this case the very same issues that were there tried and determined, would be subversive of the principle that litigation must have an end, and that the owners of property are en-

titled to find protection under a judgment when it has been regularly and fairly obtained in the proper forum.

The rulings of the trial court upon the demurrer and the various motions presented, and the submission to the jury of the issues of fact under the instructions given, were based upon the theory that the decision of this court in the Clay case was controlling and conclusive as to the issues arising in this case. In this the court was in error, and, as the record shows the plaintiff's title to the land in controversy to have been clearly established, the case is reversed and remanded, and the lower court is directed to enter judgment for the plaintiff.

SLOAN, J.—I concur in the opinion of Mr. Justice Doan, but deem it proper to add something to the views therein expressed.

There is a clear distinction to be made between cases of patents issued under the pre-emption act and the homestead act prior to the amendment of 1891, and patents issued under the latter act since its amendment, as regards their conclusiveness as to the existence or nonexistence of known mines within the boundaries of the lands conveyed by such patents at the time of their issuance. Under the former acts there were reserved from entry certain definite, easily ascertainable, and specific parts of the public domain; as, land included within the limits of incorporated towns, and known mines. Since the amendment of 1891 the only reservation is that contained in section 2302, Revised Statutes (U. S. Comp. Stats. 1901, p. 1410), reading: "Nor shall any mineral lands be liable to entry and settlement under its provisions." The term "mineral lands" is one of broader significance than "known mines." *Cosmos Exploration Co.* v. *Grey Eagle Oil Co.* (C. C.), 104 Fed. 20. The term "mineral lands" refers to a class of lands, rather than specific tracts easily ascertainable, not only by the land department, but by the applicants themselves. This distinction, while not clearly made, seems to underlie the decisions on this subject; so that the cases which hold that patents obtained under the pre-emption acts to land containing known mines are void for want of jurisdiction and may be collaterally attacked are distinguishable from those holding that the determination of the land department as to the mineral character of the lands conveyed is conclusive, and that patents issued to such lands will

not be subject to such attack; the distinction being that in the former there was such a carving out and segregation of certain specific tracts that the land department is held to be without authority, not only to grant the title of the government, but also to conclusively decide the question of its right to issue patents. In the latter, the reservation being of a class of lands, it is not only within the province, but is made a duty required of the land department to make the classification; and its action in that matter, being within its jurisdiction, is conclusive.

This is the distinction which in my view is to be made between the case at bar and the Burfenning case, and also the Clay case.

CAMPBELL, J.—I concur in the result reached in this case, but desire briefly to state my view of the question of law involved.

Whether or not the judgment of the land department as evidenced by its patent to a given tract of public land is conclusive and not open to collateral attack depends upon whether it had jurisdiction of the proceedings leading up to the patent. If the question to be determined by it is one of law, its patent is not conclusive; if one of fact, it is conclusive and is not open to collateral attack. The difficulty is to determine from the opinions of the supreme court of the United States what is a question of fact in such cases.

I have reached the conclusion from careful consideration of the two leading cases in which the land department was held to be without jurisdiction (*Morgan* v. *Nebraska,* and *Burfenning* v. *Chicago etc. Ry. Co.*) that where the records of the land department show, and they are not disputed, or are indisputable, that land is of a certain character, the power to convey by patent is a question of law, and if the land department grants such land in defiance of law it is without jurisdiction; but where the question to be determined by the land department is whether certain facts exist—for instance whether there was at the time of application for patent a known "mine," or the ground was in fact known to be mineral or swamp land—and these facts must be established by parol testimony, outside of the record, the determination of these facts, as evidenced by the patent, is conclusive.

I am therefore unable to concur in the view that this case may be reversed without overruling the holding of the Clay case.

KENT, C. J.—I am not entirely in accord with my associates in their views as to the Clay case, nor in the reasoning by which they distinguish that case from the one before us. Under the authority of the Burfenning case it would seem as though the Clay case must be upheld, unless the decision in the Burfenning case was based upon the ground that there the facts appeared of record to the land department, and were therefore not to be established by parol testimony. Certain expressions in that case seem to afford ground for believing that the decision was so based. If so, it would not be authority for the Clay case. The various decisions of the supreme court of the United States are difficult of reconciliation, and give us no clear and authoritative expression upon which we may rely, as determinative of the question whether, under such a state of facts as existed in the Clay case, the land department had, or had not, jurisdiction to determine the questions involved.

In the case before us, however, there can be no question that the land department had jurisdiction to enter upon and determine the question of fact in issue, and that such determination is conclusive. I therefore concur with Mr. Justice Doan in the views expressed by him as to the case before us, and the result reached.