# REYNOLDS & Another *v.* IRON SILVER MINING COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Submitted January 4, 1886.—Decided March 1, 1886.

In procuring a patent for a placer mine claim under § 2333 of the Revised Statutes, where the claimant is also in possession of a lode or vein included within the boundaries of his placer claim, the patent shall cover both, if he makes this known, and pays $5 per acre for twenty-five feet on each side of his vein, and $2.50 per acre for the remainder of his placer claim.

Where no such vein or lode is known to exist, the patent for a placer claim shall carry all such veins or lodes within its boundaries which may be afterwards found to exist under its surface.

But where a vein or lode is *known to exist* under the surface included in such patent, and is not in claimant's possession, and not mentioned in the claim on which the patent issues, the title to such vein or lode remains in the United States, unless previously conveyed to some one else, and does not pass to the patentee, who thereby acquires no interest in such vein or lode.

The title remaining in the United States in the veins thus known to exist and not claimed or referred to in the patent, the patentee and his grantee have no right to dispossess any one in the peaceable possession of such veins, whether the latter have any title or not.

In such case the rule which applies to actions of ejectment, and to all actions to recover possession of real estate applies, namely, that the plaintiff can only recover on the strength of his own title, and not on the weakness of defendant's title.

The facts which make the case are stated in the opinion of the court.

*Mr. T. M. Patterson, Mr. C. S. Thomas* and *Mr. R. S. Morrison* for plaintiffs in error.

*Mr. G. G. Symes* and *Mr. Hugh Butler* for defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Circuit Court for the District of Colorado, which brings here for review a judgment of that court in an action to recover possession of a part of a vein or lode of mineral deposit.

The plaintiff below, the Iron Silver Mining Company, alleges that it was the owner of one hundred and ninety-three and $\frac{43}{100}$ acres of land, conveyed by the United States by patent to its grantors, and seeks to recover of defendants a part of the land thus patented. It is described in the petition as mining land and a mining claim. The patent under which plaintiff claims, which was introduced in evidence, purports to be for placer mines, and it takes two pages of printed matter to describe the courses, distances, and corners. As the law does not permit any one claim to cover more than twenty acres in locating placer mining claims, it is obvious that under the ruling of this court in *Smelting Co.* v. *Kemp*, 104 U. S. 636, a number of these claims, amounting at least to ten, have been consolidated into one patent, which was issued to Wells and Moyer, the patentees.

The defendants below asserted a right to the vein or deposit in which they were working under lode claims called the Crown Point and Pinnacle claims, which were older than that of plaintiff.

Defendants also set out another defence in the following language :

" That at the time of the survey, entry, and patenting of the said Wells and Moyer placer claim, a certain lode, vein, or deposit of quartz or other rock in place, carrying carbonates of lead and silver-bearing ore, and of great value, called the Pinnacle lode, and a certain lode, vein, or deposit, carrying like minerals of great value, were known and claimed to exist within the boundaries and underneath the surface of said placer claim, survey lot No. 281, and that the fact that such vein or veins were claimed to exist and did exist as aforesaid within said premises was known to the patentees of said claim at all the times hereinbefore mentioned, and that in the application for patent for said placer claim the said vein or veins so known to exist were not included, and were, in the patent issued upon such application, expressly excluded therefrom. And further, in the said patent it was expressly and in terms reserved, that the premises in and by such patent conveyed might, by the proprietor of any such vein or lode of quartz or other rock in place, bearing mineral or ore as aforesaid, be entered for the purpose of extracting and removing the ore from such lode, vein, or deposit, should the same or any part thereof be found to penetrate, intersect, pass through, or dip into the premises by such patent granted."

The case was tried by a jury, and a verdict rendered for plaintiff, under a charge from the court, which required such a verdict at their hands.

The case here must be decided on the correctness of the action of the court in giving that charge, and in refusing to give instructions asked by defendants.

The full charge of the court, which was duly excepted to, is as follows :

" The evidence tends to prove that the lode in controversy was known to Wells and Moyer, grantees of the United States, at the time they made application for the placer patent, under which plaintiff claims title; also that William H. Stevens, one of the grantees of Wells and Moyer, and a grantor of the plaintiff, knew of the existence of the lode at the time application

was made by Wells and Moyer for the placer patent, procured such application to be made with a view to acquiring title to himself and his associates to the territory described, and probably with a view and intention to acquire title to the lode now in dispute in this action. Assuming the placer patent to have been obtained with knowledge and intention on the part of the patentees, as stated, the question is, whether any right or interest in the lode in controversy was conveyed by the patent. That is a question of some difficulty when presented by or on behalf of one who has shown some right or interest in the lode, or an intention to claim the same according to local law and the acts of Congress. But here the defendants show no right or title in the lode at the place in controversy. They assume the right to follow the lode on its dip without the side line of the Pinnacle location, and under the Wells and Moyer placer location. To that it is essential that they have the top and apex of the lode within their location in the general direction of the location. A small segment of the top and apex of the lode is shown within the Crown Point location, but it extends not with the length of the location, but across it, so as to convert the side lines of the claim into the end lines, and to limit the direction in which it may be pursued to the space enclosed by those lines. The place in controversy is not within the side lines of either of defendants' locations, nor within the extensions of those lines. No other ground is perceived upon which defendants may assert title or right of possession to the place in controversy, and therefore they are to be regarded as naked intruders, and as to such intruders, the plaintiff's placer title may give a right of possession and recovery. The jury is advised to find for plaintiff, with the value of the ore removed from the placer ground by defendants."

This charge was delivered to the jury after a refusal to give any of the following instructions asked by defendants:

"1. A patent to a placer claim does not pass title to any vein or lode then known or claimed to exist.

"2. If the Pinnacle and Crown Point lodes, or their vein upon which it is alleged defendants have followed into the ground of the Wells and Moyer placer, were known at time of

issue of Wells and Moyer patent, then the vein was not granted in (or was excepted from) the Wells and Moyer patent, and the plaintiff is not entitled to recover.

"4. The plaintiff must recover on strength of his own title.' If the vein is not conveyed to plaintiff by the placer patent under which they claim, then it makes no difference whether defendants have any title or not; the plaintiff cannot recover on the weakness of defendants' title.

"5. If the jury believe from the evidence that the plaintiff's grantors, at the time of the locations and entry of the Wells and Moyer placer claim, knew or had reason to presume that underneath it was a deposit or vein of ore carrying precious metals in rock in place, then the same was specially excepted from the grant of their patent, and never was the property of the plaintiff or any of its grantors, having been excluded from the grant of the government; no trespass can be committed thereon as against the plaintiff, and they cannot recover, and if the vein upon which the trespass is alleged was the vein so known, then plaintiff cannot recover.

"6. It was not the intention of the federal government to permit owners of placer mining claims to obtain title to known lodes or veins of mineral ore by embracing the same in applications for patents to such placer claims unless specially designated as lode veins in such applications. The exceptions in a patent are to be construed most strongly against the patentees, and the exceptions include not only lodes known, but also those claimed to exist within the placer at the date of the patent; if, therefore, you believe from the evidence that the lode deposit within the boundaries of the Wells and Moyer placer claims was known, or upon valid and subsisting grounds was claimed to exist therein at time of application, entry, or date of patent, then whether it is the property of the defendants or of the government is immaterial, for in either event there has been no ousting or injury to the plaintiff as to its property, and you should find for the defendants."

The conflict in principle between the instructions asked and refused and those given by the court is marked and easily discerned, and presents the only question in the case.

Its primary form is presented by the fourth of the defendants' requests, namely, " that plaintiff must recover on the strength of his own title." This is the fundamental principle on which all actions of ejectment or actions to recover possession of real estate rest. Even where the plaintiff recovers on proof of priority of possession, it is because in the absence of any title in any one else this is evidence of a title in plaintiff. If there is any exception to the rule that in an action to recover possession of land the plaintiff must recover on the strength of his own title, and that the defendant in possession can lawfully say until you show *some* title, you have no right to disturb me, it has not been pointed out to us.

The remainder of this fourth prayer was a further statement of the same rule as applied to the case in hand. " If the vein is not conveyed to plaintiff by the placer patent under which they claim, then it makes no difference whether defendants have any title or not; the plaintiff cannot recover on the weakness of defendants' title."

There is not in the record any pretence or claim of title in plaintiffs except that growing out of the placer patent to Wells and Moyer. If that gave no title to the vein in controversy plaintiffs had none. There is no assertion by them of prior possession, discovery, or claim to that vein, nor of any other right to it, than that it is found beneath the surface of this placer patent.

While the court refused to give this instruction, he did instruct the jury that the defendants were naked trespassers, and added that, " as to such intruders the plaintiff's placer title might give a right of possession and recovery." He had previously said that this would be a question of some difficulty in a case where defendants had shown some right or interest in the lode or an intention to claim the same according to local laws and the acts of Congress. If this made any difference in defendants' right as against the placer patent, then it appears to us that they did " show an intention to claim the *locus in quo* according to local laws and the acts of Congress," for they were working under the Crown Point and Pinnacle claims, which were legally established, and were pursuing the vein on which

these claims were located.  But the court held that the evidence showed that they were pursuing it when it passed out of the end lines of the claim instead of the side lines.  It would seem that such possession as this ought to be sufficient to enable them to put the plaintiff upon proof of its title.

It is fair, however, to say that the court in effect affirms the doctrine that the patent for a placer mine (this patent) gives title to a vein or lode under its surface, though known to the original claimant or patentee at the time of the assertion of the claim and issue of the patent, and not disclosed to the land officers, or mentioned in the patent, or in the original claim, as against one not having a superior title.

The court says the evidence tends to prove that the lode in controversy was known to Wells and Moyer, grantees of the United States, at the time they made application for the placer patent under which plaintiff claims title, also that Stevens, a. grantee of Wells and Moyer and grantor of plaintiff, knew of the existence of the lode at the time the application was made for the patent, and procured the application to be made, with the intention to acquire title to the lode now in dispute.

Yet, while the lode is not mentioned in the patent, the court held that for the purposes of this suit the title to it was conferred by that instrument.

It appears to us that such a proposition is opposed to the policy of the acts of Congress in the different rules which it applies to granting titles to placer mines, and to vein, lode, and fissure mines; to the express language of the statute; and to the reservations in the patent itself.

It is not necessary to go further than an examination of Chapter 6 of the Revised Statutes concerning the public lands to see this difference.  An act of Congress of May. 10, 1872, is the foundation of the existing system by which the citizen acquires right to the lands of the United States containing the precious metals, and its provisions are found in §§ 2318 to 2336 inclusive.

These sections, up to § 2328, relate mainly, if not exclusively, to mineral lodes or veins, and, among other things, they fix the amount or quantity of land which may be acquired under any

one claim, the maximum of which is 1500 feet along its length and 300 feet in width on each side of it, subject to further limitations under acts of the State legislatures, and the mining rules of the district. The price for this when a patent is sought is five dollars per acre, as measured by the surface lines of the patent, and these lines must necessarily conform to the course of the vein and not to Congressional surveys. The owner of one of these veins may follow it outside of the perpendicular extension of the side lines of the claim, but not outside of its end lines.

Placer claims, beginning with § 2329, are declared to include all other forms of mineral deposits, except veins of quartz or other rock in place, and may be entered on similar proceedings as those provided for vein or lode claims. The surveys for these shall conform as near as may be to Congressional surveys, and may include in each claim twenty acres of superficial area, but when the location cannot be made to conform to legal subdivision, it may be made as upon unsurveyed lands.

The most important part of the law in reference to the matter in hand is found in § 2333 of the Revised Statutes, which is as follows:

"SEC. 2333. Where the same person, association or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of two dollars and fifty cents per acre, together with all costs of proceedings; and where a vein or lode such as is described in section twenty-three hundred and twenty is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim, shall be construed as a conclusive declaration

that the claimant of the placer claim has no right of posses-
sion of the vein or lode claim; but where the existence of a
vein or lode in a placer claim is not known, a patent for the
placer claim shall convey 'all valuable mineral and other de-
posits within the boundaries thereof."

These varying provisions of the act of Congress as regards
the two classes of mineral deposits and their surroundings are
founded on the well known difference in their character. The
veins, loads or fissures mentioned in § 2320 are found in the sur-
rounding rock, and are described and defined in the case of the
*Iron Silver Mining Co.* v. *Cheesman and others,* recently decided
in this court, *ante,* 529. Placer mines, though said by the stat-
ute to include all other deposits of mineral matter, are those in
which this mineral is generally found in the softer material
which covers the earth's surface, and not among the rocks be-
neath. The one is only made available by following this vein
into its stony case in the bowels of the earth, detaching and
bringing it to the surface, and subjecting it to crushing, melt-
ing, and other processes by which the precious metal is separated
from the ore of which it is a part. In the other, the more usual
way is to take the soft earthy matter in which the particles of
mineral are loosely mingled, and by filtration separate the one
from the other. It is very clear that Congress considered that
the vein of mineral-bearing quartz was more valuable than the
surface or placer deposit, and it accordingly, when a patent
was asked, fixed the price of the former at $5 and of the latter
at $2.50 per acre, as represented by the superficial area of the
survey. It also for the same reason limited the quantity of the
former, which any single claimant could obtain from the gov-
ernment in some cases, to less than half of what he could ob-
tain of the latter.

This was not done, as suggested by counsel, in special re-
gard to the revenue of the government from this source, but
to prevent too much of this rich public mineral falling into
the hands of one successful explorer, to the exclusion of others.

But experience had shown that both these classes of mineral
deposits might be found within the same survey of superficial
area; and section 2333 makes specific provision for such a

case.  There was no difficulty in case of a patent for a lode or vein, for this necessarily must include both the surface ·by which it was measured, and the vein beneath it.  But in the case of a placer mine whose deposits were superficial, there might be under it a vein of far more value than the twenty acres of surface mineral.

A man cognizant of the existence of such a vein, who·could, if he established his right to it as a lode, secure only a limited part of it, if he could cover it with a placer claim, would thereby. increase the quantity of this vein over what he could get by making a lode claim, in double the amount, and in some cases, regulated by State or local mining laws, he might quadruple it.  Congress also had to deal with the possibility that a vein might be discovered under the surface of a placer claim after the claimant had received his patent.

What Congress did, and intended to do, in the presence of these suggestions, is, we think, very plain.  It made provision for three distinct classes of cases:

1.  When the applicant for a placer patent is at the time in possession of a vein or lode included within the boundaries of his placer claim, he shall state that fact, and on payment of the sum required for a vein claim and twenty-five feet on each side of it, at $5 per acre, and $2.50 for the remainder of the placer claim, his patent shall cover both.

2.  It enacted that where no such vein or lode is known to exist at the time the patent is applied for, the patent for a placer claim shall carry all valuable mineral and other deposits which may be found within the boundaries thereof.

3.  But in case where the applicant for the placer patent is not in possession of such lode or vein within the boundaries of his claim, but such a vein is *known to exist*, and it is not referred to or mentioned in the claim or patent, then the *application shall be construed as a conclusive declaration that the claimant of the placer mine has no right to the possession of the vein or lode claim.*

It is this latter class of cases to which the one before us belongs.

It may not be easy to define the words " *known to exist* " in

this act. Whether this knowledge must be traced to the appli-
cant for the patent, or whether it is sufficient that it was
generally known, and what kind of evidence is necessary to
prove this knowledge, we need not here inquire. It is perhaps
better that these questions should be decided as they arise.
They do not arise here, because the court took all this kind of
evidence from the jury on the ground that defendants were
trespassers.

It said, in the charge, not only was there evidence that the
vein was known to exist when the application was made by
Wells and Moyer, but that *they* knew it, and that one of the
parties in interest, Stevens, knew it, and procured the applica-
tion to be made for the placer patent with the intent to secure
this lode. There was here no question of sufficiency or
character of the testimony as to the knowledge of the existence
of this vein, but the jury was told that it was all immaterial be-
cause in any event the patent carried the lode as against the
defendants.

The patent itself declares that it is subject to the following
conditions:

1. That it is restricted to any lodes, veins, or other mineral-
bearing quartz, which *are not claimed or known to exist* at the
date of the patent.

2. That should any such vein or lode be claimed or known
to exist within the described premises at the date of the patent,
the same is expressly excluded from it.

It is said that this part of the patent is void because there
was no law which authorized its insertion, and because it is in
conflict with the rights of the claimant of a placer mine under
the acts of Congress.

Without deciding on the effect of the acceptance without
protest of a patent with such exceptions in the granting clause,
where their insertion is the voluntary act of the officers who
execute the instrument, it is sufficient to say that these condi-
tions but give expression to the intent of the statute.

We are of opinion that Congress meant that lodes and veins
known to exist when the patent was asked for should be ex-
cluded from the grant as much as if they were described in

clear terms. It was not intended to remit the question of their title to be raised by some one who had or might get a better title, but to assert that no title passed by the patent in such case from the United States. It remains in the United States at the time of the issuing of the patent, and in such case it does not pass to the patentee. He takes his surface land and his placer mine, and such lodes or veins of mineral matter within it as were unknown, but to such as *were known* to exist he gets by that patent no right whatever. The title remaining in his grantor, the United States, to this vein, the existence of which was known, he has no such interest in it as authorizes him to disturb any one else in the peaceable possession and mining of that vein. When it is once shown that the vein was *known to exist* at the time he acquired title to the placer, it is shown that he acquired no title or interest in that vein by his patent.

Whether the defendant has title, or is a mere trespasser, it is certain that he is in possession, and that is a sufficient defence against one who has no title at all, and never had any.

*The judgment of the Circuit Court is reversed, and the case remanded to that court, with instructions to set aside the verdict and grant a new trial.*

MR. CHIEF-JUSTICE WAITE dissenting.

I am unable to agree to this judgment. The facts briefly stated are these : The Mining Company holds title under a patent for a placer claim. Within the boundaries of this claim, as located on the surface and extended vertically downwards, is a vein or lode. The existence of this vein or lode was known when the patent under which the Mining Company holds was issued, but it had not then, nor has it now, been located as a vein or lode claim. Neither Reynolds nor Morrissey has any title to or claim upon the lode within the boundaries of the placer claim. They are mere intruders, having wrongfully, and without any authority of law, worked from an adjoining claim under the surface of the placer claim of the Mining Company and taken possession of the mineral in the lode. Under these circumstances it seems to me the Mining Company

has the better right. The question is not whether the company owns the lode or vein, nor whether it has the right to take mineral therefrom, but whether as against a mere intruder it has the better right to the possession. By the express provision of Rev. Stat. § 2333 the patent, under which the company holds, gives it no right to the possession of any vein or lode *claim* within the boundaries of the placer patent, but as yet no such *claim* exists. There is a lode or vein, but no one has either claimed or attempted to claim it. Quite different questions would arise if Reynolds or Morrissey were attempting to locate a lode claim within the boundaries of the placer patent upon a lode known to exist when the patent was applied for. In my opinion the charge of the court was right, and the judgment should be affirmed.