# NOYES *v.* MANTLE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF MONTANA.

No. 242. Argued and Submitted April 19, 1888. — Decided April 30, 1888.

When the location of a mineral lode or vein, properly made, is perfected under the law, the lode or vein becomes the property of the locators or their assigns, and the government holds the title in trust for them.

Where a location of a vein or lode of mineral or other deposits has been made under the law, and its boundaries have been specifically marked on the surface, so as to be readily traced, and notice of the location has been recorded in the usual books of record within the district, that vein or lode is " known to exist " within the meaning of that phrase as used in Rev. Stat. § 2333, although personal knowledge of the fact may not be possessed by the applicant for a patent for a placer claim.

BILL IN EQUITY, to quiet title. Decree of perpetual injunction against defendants, from which they appealed to the Supreme Court of the Territory. The decree and judgment being affirmed there, they appealed to this court. The case is stated in the opinion.

*Mr. Thomas L. Napton,* for appellant, submitted on his brief.

*Mr. S. S. Burdett* for appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

This is a suit in equity to determine the adverse claims of the defendant below, appellant here, to a certain quartz lode mining claim, known as the Pay Streak lode in Summit Valley Mining District, in the county of Silver Bow, in the Territory of Montana. The plaintiffs below assert title to the claim as grantees of Daniel Zinn and John O. McEwan, who discovered and located it on the 23d of April, 1878, under the provisions of the act of Congress of May 10, 1872, 17 Stat. 91, c. 152, which are reënacted in the Revised Statutes, Title 32, c. 6.

The defendant below asserts title to the lode claim under a patent of the United States issued to him on the 23d day of April, 1880, for a placer mining claim, which includes that lode within its boundaries. The application for the patent was made December 14, 1878.

Several interrogatories touching matters in issue were submitted to a jury called by the court, though sitting in the exercise of its equity jurisdiction. Their findings in answer to the interrogatories were, with one exception, adopted by the court. The excepted finding gave an erroneous date to the application of the defendant for the patent, and was therefore set aside. The court thereupon found the fact as to the date as it appeared from the evidence. Upon the facts thus established the court rendered its decree. They were substantially these: That on and prior to December 14, 1878, a vein or lode of quartz, bearing gold and silver, was known to exist in the

ground in controversy; that its existence could have been readily ascertained by any person examining the ground with an honest purpose to inform himself of the fact; that in the month of April, 1878, Zinn and McEwan, the grantors and predecessors in interest of the plaintiffs, discovered in the ground a vein or lode of quartz bearing gold and silver, and they posted a notice claiming the ground, and the vein or lode which it included; that at the same time they marked off the ground by stakes so that its boundaries could be readily traced; that they named the claim in their notice of location as the Pay Streak lode, and within twenty days after its dis-covery filed in the proper office of the county a notice of their claim, and of its location, such as was usual where lode claims were located in that mining district; that in July, 1881, they conveyed to the plaintiffs all their interest in the claim; that in August, 1881, before the commencement of this suit, the plaintiffs caused a survey of the claim to be made, and its boundaries marked so as to be readily traced; that they then re-located the claim, of which notice within twenty days thereafter was filed in the recorder's office of the county; and that they were in its possession at the commencement of this suit.

The jury did not find that the existence of a vein or lode in the ground in controversy was known to the defendant at the time of his application for a patent; and reported that they were unable to agree on this point. The District Court, in which the suit was brought, did not consider that this want of a finding on the question of knowledge by the defendant affected the position of the plaintiffs, and it rendered a decree adjudging that the right of possession to the lode claim was in them, and that the defendant had no title, estate, or interest therein, and that he be enjoined from asserting or claiming any as against them. The Supreme Court of the Territory affirmed the decree, holding that the title to the lode mining claim had passed to the grantors of the plaintiffs by their discovery and location under the statute, and that the subsequent patent to the defendant of a placer claim did not affect their title to the lode claim, for that title was not then subject to

the disposition of the government. The court also held that the lode claim was known to exist within the meaning of the statute when it had been located pursuant to its requirements, whether knowledge of its existence was possessed or not by the defendant at the time he made his application for a patent. These rulings constitute the only matters meriting consideration in this court.

Section 2322 of the Revised Statutes, reënacting provisions of the act of Congress of May 10, 1872, (17 Stat. 91,) declares that the locators of mining locations previously made or which should thereafter be made, on any mineral vein, lode, or ledge on the public domain, their heirs and assigns, where no adverse claim existed on the 10th of May, 1872, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, so long as they comply with the laws of the United States, and with state, territorial, and local regulations, not in conflict with those laws governing their possessory title. There is no pretence in this case that the original locators did not comply with all the requirements of the law in making the location of the Pay Streak lode mining claim, or that the claim was ever abandoned or forfeited. They were the discoverers of the claim. They marked its boundaries by stakes, so that they could be readily traced. They posted the required notice, which was duly recorded in compliance with the regulations of the district. They had thus done all that was necessary under the law for the acquisition of an exclusive right to the possession and enjoyment of the ground. The claim was thenceforth their property. They needed only a patent of the United States to render their title perfect, and that they could obtain at any time upon proof of what they had done in locating the claim, and of subsequent expenditures to a specified amount in developing it. Until the patent issued the government held the title in trust for the locators or their vendees. The ground itself was not afterwards open to sale. The location having become completed in April, 1878, antedates by some months the application of the defendant for a patent for his placer claim. That patent was subject to the conditions of § 2333 of the Revised Statutes, which is as follows:

" Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of two dollars and fifty cents per acre, together with all costs of proceedings ; and where a vein or lode, such as is described in section twenty-three hundred and twenty, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim ; but where the existence of a vein or lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof."

This section was before us for consideration in *Reynolds* v. *Iron Silver Mining Co.* at October term, 1885, 116 U. S. 687 ; and also at the present term, 124 U. S. 374. As stated by the court at both times, it makes provision for three classes of cases :

1. When one applies for a placer patent, who is at the time in the possession of a vein or lode included within its boundaries, he must state the fact, and then, on payment of the sum required for a vein claim and twenty-five feet on each side of it at $5.00 an acre, and $2.50 an acre for the placer claim, a patent will issue to him covering both claim and lode.

2. Where a vein or lode, such as is described in a previous section, is known to exist at the time within the boundaries of the placer claim, the application for a patent therefor, which does not also include an application for the vein or lode, will be construed as a conclusive declaration that the claimant of the placer claim has no right of possession to the vein or lode.

3. Where the existence of a vein or lode in a placer claim is not known at the time of the application for a patent, that instrument will convey all valuable mineral and other deposits within its boundaries.

The section can have no application to lodes or veins within the boundaries of a placer claim which have been previously located under the laws of the United States, and are in possession of the locators or their assigns; for, as already said, such locations, when perfected under the law, are the property of the locators, or parties to whom the locators have conveyed their interest. As said in *Belk* v. *Meagher*, 104 U. S. 279, 283 : " A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." It is not, therefore, subject to the disposal of the government. The section can apply only to lodes or veins not taken up and located so as to become the property of others. If any are not thus owned, and are known to exist, the applicant for the patent must include them in his application, or he will be deemed to have declared that he had no right to them. *Sullivan* v. *Iron Silver Mining Co.*, 109 U. S. 550, 554.

When can it be said that a vein or lode is "known to exist" within the meaning of the section? In *Reynolds* v. *Iron Silver Mining Company*, when first here, the court said that it might not be easy to define the words "known to exist," and as it was not necessary to determine whether the knowledge must be traced to the applicant for the patent, or whether it was sufficient that it was generally known, and what kind of evidence was necessary to prove this knowledge, it was better that the questions should be decided as they arise. When the case was here a second time the court said that the language of the section appeared to be sufficiently intelligible in a general sense, and yet it became difficult of interpretation, when applied to the determination of rights asserted to such veins or lodes, from the possession or absence of knowledge at the time application is made for a patent, and that if a general knowledge of their existence were held sufficient, the inquiry would follow as to what would constitute such knowledge, so

as to create an exception to the grant, notwithstanding the ignorance of the patentee. These suggestions indicated the difficulties of some of the questions which might arise in the application of the statute; but in the present case we think that difficulty does not exist. Where a location of a vein or lode has been made under the law, and its boundaries have been specifically marked on the surface, so as to be readily traced, and notice of the location is recorded in the usual books of record within the district, we think it may safely be said that the vein or lode is known to exist, although personal knowledge of the fact may not be possessed by the applicant for a patent of a placer claim. The information which the law requires the locator to give to the public must be deemed sufficient to acquaint the applicant with the existence of the vein or lode.

A copy of the patent is not in the record, so we cannot speak positively as to its contents; but it will be presumed to contain reservations of all veins or lodes known to exist, pursuant to the statute. At any rate, as already stated, it could not convey property which had already passed to others. A patent of the government cannot, any more than a deed of an individual, transfer what the grantor does not possess.

*Judgment affirmed.*