[Sac. No. 1766.   Department Two.—June 6, 1911.]

## H. J. VAN NESS, Respondent, v. JOHN ROONEY et al., Appellants.

PUBLIC LANDS—POLICY OF UNITED STATES RESPECTING MINERAL LANDS —RESERVATION FROM ORDINARY SALE.—From its inception, it has been the policy of the United States government to retain the mineral lands of the United States for mining purposes, and not to allow title to them to pass to pre-emptors, homesteaders, timber applicants, grantees under wagon road or railroad grants, or in any case save where patents were secured in pursuance of the provisions permitting the purchase directly of mineral lands.

ID.—LOCATOR NEED NOT APPLY FOR PATENT—MINERAL CLAIMS ARE
PROPERTY—RIGHT OF EXCLUSIVE POSSESSION.—No provision has
ever been enacted in the mining laws of the United States com-
pelling a locator of a mining claim to patent his claim. Such
claims on public land are property in the fullest sense of the word,
and a valid location thereof, made and kept up in accordance with
the statute, has the effect of a grant by the United States of the
right of present and exclusive possession of the lands located.

ID.—RAILROAD GRANT—LOCATION OF MINERAL LAND PRIOR TO PATENT.—
Mineral lands situated within the limits of railroad grants are sub-
ject to location up to the time of the issuance of the patent.

ID.—ACTION TO ANNUL PATENT TO RAILROAD—QUIETING TITLE TO MIN-
ERAL LAND EXCEPTED FROM PATENT.—The act of Congress of March
2, 1896, prohibiting the bringing of actions by the United States to
annul patents theretofore erroneously issued under railroad and
wagon-road grants, after five years from the time of the passage of
that act, does not debar one who has made a valid location of mineral
land within the limits of a railroad grant, prior to the issuance of a
patent therefor, which on its face expressly excluded and excepted
from the lands granted all mineral lands found to be in the tracts
described in the granting clause of the patent, from maintaining
an action to quiet his title to his mineral claim after the expiration
of such time. Such action is not one to annul or avoid a patent
issued by the government of the United States, and the relief sought,
if granted, would not invalidate such patent, but would merely, by
interpreting the instrument, determine whether the mining claim
was included in the reserving clause of the patent.

ID.—EFFECT OF EXCEPTION OF MINERAL LAND IN PATENT TO RAILROAD.—
A patent for land included in a railroad grant, which expressly ex-
cludes and excepts from the lands described in the granting clause
"all mineral lands should any such be found in the tracts aforesaid,"
does not pass title to a mineral claim included therein, which had
been duly and legally located prior to the issuance of the patent.

ID.—DETERMINATION OF CHARACTER OF LAND—DUTY OF LAND DEPART-
MENT—EFFECT OF PATENT—LANDS KNOWN TO BE MINERAL.—The
determination of the question whether public lands are mineral, and
thus reserved under the provisions of the general law from sale,
or agricultural or other lands of which it may make disposition,
being given to the land department, the general rule is, that the
issuance of a patent is a conclusive determination that the land is
agricultural or such other character as might be disposed of under
the general law providing for the disposition of public lands and
not mineral land reserved from sale, and the effect of the issuance of
a patent to the land as agricultural is to transfer to the patentee all
mineral deposits which may be subsequently discovered within its
boundaries but which were not known to exist at the time the patent
was issued. The rule, however, is equally well established that

mineral deposits known to exist in the land at the time the patent was issued do not pass under it.

ID.—QUIETING TITLE—LOCATOR MAY MAINTAIN ACTION.—One in possession of a mining claim situated within the limits of a railroad grant, under a valid location made prior to the issuance of a patent to the railroad, is in privity with the United States, and although he holds a mere equitable title, may have the same quieted against a grantee of the railroad, asserting title under such patent.

APPEAL from an order of the Superior Court of Trinity County refusing a new trial. James W. Bartlett, Judge.

The facts are stated in the opinion of the court.

J. D. Hall, and Taylor & Tebbe, for Appellants.

Braynard & Kimball, for Respondent.

LORIGAN, J.—This action was brought by plaintiff against defendants to quiet his title to a quartz mining claim known as the "Five Pines Mine" located in Trinity County, and for an injunction restraining defendants from trespassing on or extracting ore therefrom. Plaintiff proved a valid location of the mine by one Edwin Baker on August 26, 1895, and a conveyance by said locator to plaintiff; that the claim consisted of a piece of land fifteen hundred feet long by six hundred feet wide located partly in section 20 and partly in section 29, township 35 north, range 7 west, M. D. M., about half the surface ground of said claim lying in each of said sections; that the annual work and labor required by law to be done had been performed on said claim each year after its location, and that the claim embraced valuable gold-bearing ore and contained no deposits of coal or iron.

The defendants asserted title to that portion of the mining claim located in section 29 as successors in interest under a patent issued by the United States to the Central Pacific Railroad Company, dated February 14, 1896. This patent purported to convey to said railroad company some two hundred thousand acres of land in various sections, townships, and ranges in California, including all of said section 29. The descriptive calls in the patent are followed by the granting clause whereby the United States grants to the Central Pacific

Railroad Company "all the tracts of land described in the foregoing, yet excluding and excepting all mineral lands should any such be found in the tracts aforesaid, but this exclusion and exception according to the terms of the statute shall not be construed to include coal and iron lands."

Judgment was entered in favor of plaintiff declaring him to be the owner and entitled to the possession of the mining ground in question against every one except the government of the United States; that defendants had no right or title to any part thereof, and enjoined them from trespassing upon the property. Defendants moved for a new trial, which being denied, this appeal is taken solely from the denial of said order.

The judge of the superior court of Trinity County—Hon. J. W. Bartlett—before whom this cause was tried, in ordering judgment for plaintiff filed a written opinion in which he set forth so clearly the questions involved in the suit with accurate declarations of law bearing on them, that we quote from it extensively.

After referring to the facts, as we have recited them above, including the terms of the patent to the Railroad Company and the exceptions contained therein, the opinion of said superior judge proceeds:

"What if any is the effect of the exception and reservation above set forth in said patent is determinative of the issues involved in this case. Plaintiff's claim is that by virtue of this exception and reservation no title passed by the patent to that portion of the 'Five Pines Mine' which lies within that portion of said section 29 of township 35 north, range 7 west, M. D. M., to which defendants allege title. Defendants claim that plaintiff is debarred from making this claim by reason of the provisions of the act of Congress of March 2d, 1896, which prohibits the bringing of actions by the United States to annul patents theretofore erroneously issued under railroad or wagon road grants, after five years from the time of the passage of said act of Congress; that this action is an unauthorized attack upon a United States patent, and that if plaintiff was ever in a position to question the validity of the passing under said patent of the title to said section 29 he has lost his rights by not bringing his action within five years from the time the patent was issued. Defendants also claim that the excepting

clause is inserted in the patent without any authority of law and is void and of no effect.

"These questions are of momentous importance for on their proper solution depends the validity of titles of locators on much of the mineral lands in the mining districts of Trinity County and in other of the mining counties of the state of California. While a great number of authorities on questions relating to the scope and effect of patents issued by authorized officers of the Government of the United States were cited in the argument of counsel at the trial of this action, none have been presented, and after much research this court has not as yet found any decision of United States supreme court, federal court, or state supreme court, clearly or directly determining the questions urged by defendants, and in this action it is compelled to solve those matters largely through a construction and application of the United States statutes governing the transfers of public lands and those governing the locating and holding of mining claims situate on the public domain.

"From its inception it has been the policy of the United States government to retain the mineral lands of the United States for mining purposes, and not to allow title to them to pass to pre-emptors, homesteaders, timber applicants, grantees under wagon road or railroad grants, or in any case save where patents were secured in pursuance of the provisions permitting the purchase directly of mineral lands. This is evidenced by all the statutes of the United States relating in any way to the disposal of public lands, by the requirements in final proofs when made by claimants for any variety of land, and by various resolutions of the Congress of the United States declaring that mineral lands were not intended to be granted under the guise of grants in aid of the construction of wagon roads and railways. In the recitals of the patent involved in the case at bar it is specified that the act under which the patent is issued does not pass mineral lands, and the exception and reservation in question indicate that the officers authorized to make disposition of the lands by patent were desirous of preserving for the people of the United States any mineral lands that might be found in the large portion of the public domain which was being given for all time into the hands of a private corporation.

"By the mining statutes of the United States passed in 1866

the right of entering upon and locating and appropriating lands valuable for their mineral deposits was conferred upon every citizen of the United States and those who might declare their intention to become such citizens. By the discovery of mineral and marking of boundaries and compliance with such rules as local mining districts or state legislatures might enact not to conflict with the United States laws, the locator of a quartz mining claim was given the exclusive right to the possession of the lands and the mineral therein contained within the boundaries of his claim. Only one condition was imposed upon him and that was in every calendar year he must perform in work and labor and improvements upon his mine at least one hundred dollars in value. If he did not do this he was liable to lose his mine, in the event some other qualified locator made a location of the claim before the original locator had resumed work. His claim did not become forfeited to the government because of failure to do the work as he could resume operations and rely upon his original title by location at any time before another had located. Under these mere locations much of the valuable mining lands of the United States have been held and worked, and are still held and worked, and the title kept alive by the required work in each year has always been regarded as a perfectly safe and secure title. No provision has ever been enacted compelling any miner to patent his claim, and time and again these locations have been held to have all the effect and incidents of a grant from the government. As said by the supreme court of the United States in *Forbes* v. *Gracey,* 94 U. S. 767, [24 L. Ed. 313], 'Mining claims on public land are property in the fullest sense of the word.' In the case of *Gwillim* v. *Donnellan,* 115 U. S. 49, [5 Sup. Ct. 1112, 29 L. Ed. 348], the same court holds, 'A valid location of mineral lands made and kept up in accordance with statute has the effect of a grant by the United States of the right of present and exclusive possession of the lands located.' Mineral lands situated within the limits of railroad grants are subject to location up to the time of the issuance of the patent is clearly determined in the great case of *Barden* v. *N. P. R. R. Company,* 154 U. S. 288, [14 Sup. Ct. 1030, 38 L. Ed. 992], by the supreme court of the United States, and this court is the final arbiter of all the questions arising in cases like the one before this court, and this decision

alone precludes this court from finding that plaintiff's grantor was not entitled to this land when the patent under discussion was executed to the Central Pacific Railroad Company.

"The argument of defendants that plaintiff is debarred from the relief he seeks because of the provisions of the act of Congress of March 2d, 1896, is wholly without merit. Plaintiff is not seeking in this action to annul or avoid a patent issued by the government of the United States. The effect of granting the relief he asks does not in any way invalidate the patent in question. It is an interpretation of the instrument that will be brought about by the judgment in this action, which will determine what if any lands in section 29 of township 35 north of range 7 west, M. D. M., are included in the reserving clause of the patent. It is safe to presume that when the president of the United States was about to sign the patent, if it had been called to his attention that there was on said section 29 a quartz claim which has been duly located, which was being worked, which had defined bounds, or could be identified and defined, that he would have refused to sign the patent until these lands had been expressly excepted. But to except such lands it was not necessary for him to know that an actual location had been made. That could be an actual fact as in this instance it was, without the knowledge reaching the land department or the president prior to the issuance of the patent. By virtue of such location, and because of the mining statutes, and by reason of the interpretation made by the supreme court of the United States as to the effect of such location, the lands embraced in the location had passed into the possession and control of the locator, his location had as effectually given him a right to the possession of the located claim, as if it had been granted to him by the government of the United States.

"The moment the locator discovered a valuable mineral deposit on the lands and perfected his location in accordance with law, the power of the United States government to deprive him of the exclusive right to the possession and enjoyment of the located claim was gone, the lands had become known mineral lands, and they were exempted from lands that could be granted to any railroad company. On August 25, 1895, a lode had been found to exist on the section in controversy in this action, mineral lands had been found in one of the

tracts mentioned in the patent, and by force of the reserving clause therein these lands never passed from the government by reason of the patent.

"The case of *Noyes* v. *Mantle,* 127 U. S. 348, [8 Sup. Ct. 1132, 32 L. Ed. 168], is most convincing that such is the construction that should be placed on the reservation in the patent. In this case the supreme court of the United States says: 'Where a location of a vein or lode has been made under the law, and its boundaries have been specifically marked on the surface so as to be readily traced, and notice of the location is recorded in the usual books of record within the district, we think it may safely be said that the vein or lode is known to exist, although personal knowledge of the fact may not be possessed by the applicant for a patent of a placer claim. The information which the law requires the locator to give to the public must be deemed sufficient to acquaint the applicant with the existence of the vein or lode. A copy of the patent is not in the record, so we cannot speak positively as to its contents; but it will be presumed to contain reservations of all veins or lodes known to exist pursuant to the statute. At any rate as already stated, it could not convey property which had already passed to others. A patent of the United States cannot any more than a deed of an individual transfer what the grantor does not possess.'

"Plaintiff's predecessor in interest having duly located the 'Five Pines Mine,' before the issuance of the patent here in question, that portion of said mine which lies within the west half of the northwest quarter of section 29 of township 35 north of range 7 west, M. D. M., must be held to be not included in the lands conveyed by the patent to the Central Pacific Railroad Company because of the reservation contained in the granting clause of the patent, and judgment in this action should be in favor of the plaintiff as prayed for in his complaint."

The affirmance of this appeal might be rested upon the legal principles announced in this opinion of the trial judge and further consideration of the matter made unnecessary if it were not that some points and authorities cited by appellant here are to be noticed, as well as some decisions other than those referred to by the trial judge to be cited.

The principal claim of the appellants is that the patent of

the government to the railroad company was conclusive of the fact that the land was such as was patentable under the grant; that as land which was mineral in character (save coal and iron lands) could not be granted, the issuance of the patent, accompanied by the presumption that the land department had done its duty, conclusively established that the lands as described in the patent were non-mineral in character, and the exception and reservation of mineral land contained therein amounted to nothing.

As a general proposition, and as applied to the disposition of its public lands by the government of the United States, the rule contended for by appellants is undoubtedly true. The land department is vested with special power to determine the claims of different persons to public lands it is authorized to dispose of. The duty is cast upon it to determine the character of the public lands as to whether it is mineral land reserved under the provisions of the general law from sale, or agricultural or other land of which it may make disposition. The determination of this question of the character of the land being given to the land department, the general rule is that the issuance of a patent is a conclusive determination that the land is agricultural or such other character as might be disposed of under the general law providing for the disposition of public lands and not mineral land reserved from sale, and the effect of the issuance of a patent to the land as agricultural land is to transfer to the patentee all mineral deposits which may be subsequently discovered within its boundaries but which were not known to exist at the time the patent was issued. While this is the general rule as to vesting in the patentee of agricultural land the title to all mineral deposits, the existence of which were unknown when the patent was issued, the rule is equally established that mineral deposits known to exist in the land at the time the patent was issued do not pass under it.

In this state this was held to be the rule in cases involving patents issued to railroad companies under the same general act of Congress making such grants and which explicitly excluded and excepted from the operation thereof grants of mineral lands and with similar express exclusion and exception in a patent as to mineral land should any be found in the premises granted.

The first case, *McLaughlin* v. *Powell,* 50 Cal. 64, was ejectment, plaintiff deraigning title under a patent of the United States to the Western Pacific Railroad Company of California issued in 1870. This patent, as does the one here, excluded and excepted mineral land should any be found to exist on the tracts described in the patent. Defendant offered to prove that a portion of the land described in the patent and of which plaintiff sought to recover possession was mineral land and that he had held it as a mining claim since 1866. The trial court refused to permit him to do so and the court reversing the cause for this refusal said: "The exception contained in the patent introduced by the plaintiff is part of the description and is equivalent to an exception of all the subdivisions of the land mentioned which were 'mineral' lands. In other words, the patent grants all of the tracts named in it which are not mineral lands. If all are mineral lands it may be that the exception is void; but the fact cannot be assumed, as by its terms the exception is limited to such as are mineral land and does not necessarily extend to all the tracts granted. We think the defendant should have been allowed to prove that the demanded premises were mineral lands."

In *Chicago Quartz M. Co.* v. *Oliver,* 75 Cal. 194, [7 Am. St. Rep. 143, 16 Pac. 780], the action was brought by plaintiff to quiet its title to a quartz mining claim to which the defendant asserted title as successor in interest under a patent issued to the Central Pacific Railroad Company in 1870 and which patent contained a provision, as in the patent involved here, excepting and excluding all mineral land, should any be found in the patented premises. The trial court found that the Chicago Quartz Mining Company's quartz mine was valuable gold-bearing mineral land and had been notoriously known and frequently worked as such ever since 1861, and thereupon made a decree in favor of plaintiff quieting its title. On appeal here the same point was made as is urged now that the patent was conclusive and not subject to collateral attack. In affirming the judgment, this court discussed the acts of Congress under which these grants to the railroad company were made and the duty of the land department relative to issuing patents thereunder. In connection therewith it said: "In the original act (granting lands to railroads in aid of the construction of their roads) all mineral lands are expressly ex-

cepted from its operation and in the Amendatory Act it is enacted that the grant shall not include mineral lands or any lands returned and denominated as mineral lands. 'Whatever is included in the exception is excluded from the grant; and it therefore often becomes important to ascertain what is excepted in order to determine what is granted.' (*Leavenworth etc. R. R. C.* v. *United States,* 92 U. S. 733, [23 L. Ed. 634].)' It is not claimed that the officers on whom was devolved the duty of issuing the patents to the lands granted could add anything to the grant. But it is claimed that the patent is conclusive evidence that the grant included all the land covered by the patent. The supreme court of the United States has said: 'A patent may be collaterally impeached in any action and its operation as a conveyance defeated by showing that it had no jurisdiction to dispose of the lands; that is the law did not provide for selling them, or that they had been reserved from sale or dedicated to special purposes or had previously been transferred to others.' (*Smelting Co.* v. *Kemp,* 104 U. S. 636, [26 L. Ed. 875].) This is quoted approvingly in the opinion of the court delivered by Field, J., in *Wright* v. *Roseberry,* 121 U. S. 488, [7 Sup. Ct. 985, 30 L. Ed. 1039].)" And following the rule announced in *McLaughlin* v. *Powell,* it was held that such a patent only grants lands which are non-mineral in character; that the exception of mineral lands in the patent is part of the description and equivalent to an exception therefrom of all lands that were mineral and that the Chicago Quartz Mining Company had a right to show that the land that it claimed was known mineral land at the time of and long prior to the issuance of the patent to the railroad company, and was land within the exception in the patent.

Aside from the cases in our court dealing particularly with patents under grants of Congress to railroad companies, the rule appears to be general that mineral deposits do not pass under a patent issued for land subject to disposal or sale where, at the time of the issuance of the patent, such mineral deposits are known to exist. (*Reynolds* v. *Iron Silver Min. Co.,* 115 U. S. 687, [6 Sup. Ct. 601, 29 L. Ed. 774]; *Davis's Admr.* v. *Weibbold,* 139 U. S. 507, [11 Sup. Ct. 628, 35 L. Ed. 238]; *Kansas Min. & Mill Co.* v. *Clay,* 3 Ariz. 326, [29 Pac. 9]; *Loney* v. *Scott,* (Ore.), 112 Pac. 173.)

In *Reynolds* v. *Iron Silver Min. Co.*, 115 U. S. 687, [6 Sup. Ct. 601, 29 L. Ed. 774], a patent was granted for a placer mine within the boundaries of which when the patent was issued a quartz mine was known to exist. Speaking of the effect of the grant to the placer claim patentee under this circumstance, the court said: "He (the placer claim patentee) takes his surface land and his placer mine and such lodes or veins of mineral matter within it as were unknown, but as to such as were known to exist he gets by that patent no right whatever. The title remaining in his grantor, the United States, to this vein, the existence of which was known, he has no interest in it as authorizes him to disturb any one else in the peaceable possession and mining of that vein. When it is once shown that the vein was known to exist at the time he acquired title to the placer it is shown that he acquired no title or interest in that vein by his patent. Whether the defendant has title or is a mere trespasser, it is certain that he is in possession and that it is a sufficient defense against one who has no title at all nor ever had one." It was therefore held that no title to the quartz ledge passed to the placer claim patentee, but the title thereto remained in the United States government. In the case of *Davis's Admr.* v. *Weibbold*, 139 U. S. 507, [11 Sup. Ct. 628, 35 L. Ed. 238], it was likewise held that as to known mineral land no title passed to the patentee. And to the same effect are the other authorities referred to by us.

Certain California cases are cited by appellant under which they claim that the patent to the railroad company is conclusive against the attack of respondent. These are particularly: *Gale* v. *Best*, 78 Cal. 235, [12 Am. St. Rep. 44, 20 Pac. 550]; *Saunders* v. *La Purisima etc. Co.*, 125 Cal. 159, [57 Pac. 656]; *Patterson* v. *Ogden*, 141 Cal. 43, [99 Am. St. Rep. 31, 57 Pac. 443], and *Jameson* v. *James*, 155 Cal. 275, [100 Pac. 700]. But an examination of these cases shows that the attack on the patent was made by junior claimants. As to such claimants it is clear, as pointed out in those authorities, that the patent to the land as agricultural land is conclusive.

But the plaintiff here is not a junior claimant. He had made a valid mining location and initiated his title to his mining claim in the quarter section in question nearly six months before the issuance of the patent to the railroad com-

pany, and as the law is that mineral deposits whose existence are known when the patent is issued do not pass under it, the patent was ineffectual to transfer any title to the appellants as to the mining claim of the respondent.

As to the right of the respondent to have his title quieted as against defendants we have no doubt. Respondent was in possession of his mining claim under a valid location made prior to the issuance of the patent under which appellants claim and was, therefore, in privity with the United States. He is the equitable owner of the mining claim and while the government holds the legal title it holds it in trust for him to issue a patent therefor if he should elect to obtain one upon his complying with the provisions of the law entitling him to such issuance. Under such circumstances, while respondent's title to the mining claim is only an equitable one and though the legal title is in the government, he is entitled to have such equitable title quieted against appellants who, though they acquired no title whatever to the mining claim of respondent under the patent to the railroad, are nevertheless asserting title to it against respondent.

The order appealed from is affirmed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.