**476**

445 P.2d 225

HECLA MINING COMPANY (Substituted in place of Lucky Friday Silver-Lead Mines Company), a corporation, Plaintiff-Respondent,

v.

ATLAS MINING COMPANY, a corporation and J. W. Greenough, Defendants-Appellants.

No. 10149.

Supreme Court of Idaho.

Sept. 16, 1968.

William A. Reagan, Coeur d'Alene, and D. L. Holland, John A. Frankovich, R. Lewis Brown, Jr., Butte, Mont., for appellants.

Charles E. Horning, Wallace, Senior & Senior, Salt Lake City, Utah, Twitty, Sievwright & Mills, Phoenix, Ariz., for appellees.

McQUADE, Justice.

In the silver rich mining area of Shoshone County, Idaho, four of the most productive claims are popularly known as the Lucky Friday claims. These claims are: Lucky Friday; Lucky Friday Fraction No. 2; Northern Light; and Good Friday. All were located as mineral claims at different times between 1889 and the end of 1906. The three claims first mentioned were conveyed in 1906 to the Lucky Friday Mines Company, which also that year located the Good Friday claim. By various mesne conveyances and changes of corporate control, the interest of Lucky Friday Mines Company in these claims has been transferred to respondent Hecla Mining Company.

The four Lucky Friday claims lie next to one another, each having a common boundary with at least one of the others. Lying nearby two of the claims, separated by two narrow intervening pieces of land is a tract in which appellant Atlas Mining Company concededly owns the surface rights; this tract may be called the Atlas

Area. The central point in issue on this appeal concerns subsurface rights in the Atlas Area: whether appellant Atlas owns a vein or lode underlying the Atlas Area notwithstanding that it may apex in the Lucky Friday claims?[1]

The district court resolved this controversy by entering summary judgment in favor of respondent Hecla, declaring that it had full extralateral rights in the Lucky Friday claims and by reason of the rights, Hecla could follow veins apexing in its claims beneath the surface of the Atlas Area. Atlas appeals from this judgment. We affirm.

In the view we take of the present action, there is no issue of material fact to forestall the entry of summary judgment. The district court found, from documents of record before it on the motion for summary judgment, that each of the Lucky Friday claims was validly located, at different times, before 1906. The record includes proofs of labor on these four claims for the entire period 1907 to 1916. And the court found that "All annual labor, or assessment work, required by law" was performed on each of the four claims and "all required proofs of labor were timely filed for record" between respective location and sometime in 1926, when a mineral patent covering these claims was issued to Hecla's predecessor. This finding has not been assigned as error.

June 1913, John Mendy, acting through an attorney-in-fact, applied for a non-mineral or agricultural patent to a substantial portion of the area covered by two of the Lucky Friday claims. Accompanying such application was a supporting affidavit by one Charles McKin-

nis stating that affiant had inspected the pertinent land and believed that no portion of it had been claimed or worked for mining purposes and that it was essentially non-mineral land. Non-mineral patent was issued January 16, 1914, to Mendy who seventeen days later (February 2, 1914), acting through his same attorney-in-fact, conveyed it and land covered by it to National Copper Mining Co. of which Charles McKinnis was an officer and director. The patent, though non-mineral in character, purported to grant all rights to the subsurface area within the vertical downward extensions of its boundaries, including mineral rights thereto without regard to apexes of veins or lodes.

Notwithstanding the McKinnis affidavit, as mentioned above, statements of mining locations covering the contested properties had been duly filed more than ten years prior to Mendy's application, and annual proofs of labor on the properties also had been duly filed. In this regard the district court concluded that the four Lucky Friday claims:

"were valid and subsisting unpatented claims in the possession of and occupied by said Lucky Friday Mining Company when the United States purported to issue a non-mineral patent to John G. Mendy in 1914 for land which included the land upon which said Lucky Friday claims, or a substantial portion thereof, were situated."

This conclusion has not been assigned as error.

Early in 1923, Hecla's predecessor in interest instituted proceedings in the United States Land office for mineral patent on the four mining claims. August 23, 1923,

1. Originally, this action began when in 1962 appellant J. W. Greenough, since deceased, then president of appellant Atlas, located on two of the four Lucky Friday claims, asserting that they were part of the public domain and open for discovery. Respondent Hecla brought this action to quiet title to the two claims. In a counterclaim filed with its answer, appellant Atlas stated that Hecla's predecessor had asserted a right to enter the At-

las Area and extract minerals therefrom (apparently following veins apexing in the Lucky Friday claims). Atlas asked for injunctive relief against such entry.

The district court found for Hecla in the quiet title action and against Atlas on its counterclaim. Atlas has abandoned its contention that it may locate on the Lucky Friday claims, and appeals only from that part of the judgment denying its counterclaim.

a final certificate of mineral entry was issued to Hecla's predecessor, but by letter dated February 28, 1924, the Commissioner of the General Land Office informed Lucky Friday that examination of tract books had disclosed that the claims were partly situated on the land for which Mendy had received his agricultural patent on January 16, 1914. Therefore, the Commissioner wrote, the mineral entry certificate previously awarded to Lucky Friday would be cancelled if Lucky Friday did not show cause to the contrary within thirty days.

Then commenced various communications and transactions which are largely immaterial in the view we take of this appeal. Generally, they may be summarized as follows. An attorney for Hecla's predecessor wrote to the Commissioner of the General Land Office that until receipt of the Commissioner's letter "we did not know that this land had been patented to any one," and that upon discussion of the matter with the officers of National Copper Mining Co. it developed that they had no intent to cover "any part of this old group of [Lucky Friday] claims, the error arising from their failure to find the section corners and run the section line." He asked advice concerning "what method [of reconveyance] will be agreeable and acceptable, and will be approved by your office."

June 17, 1924, the Commissioner wrote instructions indicating two possible courses of action by Lucky Friday: (1) acceptance of a partial patent (i. e. on the portions of the Lucky Friday claims not covered by the Mendy agricultural patent); (2) reconveyance to the United States of either the mineral land covered in the Mendy agricultural patent or—the "better and more uniform procedure"—reconveyance of the entire subdivision covered by the Mendy patent, in which event "The mineral claims could then be taken out according to their survey and the balance of the scrip [Mendy agricultural patent] location could be alloted [sic] and patent could then be reissued under a new and appropriate description."

Several months later, National Copper Mining Company executed in favor of Hecla's predecessor a quitclaim deed describing in metes and bounds the Lucky Friday claims, and relinquishing all ownership of the property described. Hecla's predecessor then conveyed its entire interest in the land to the United States which then issued an order purporting to cancel the Mendy agricultural patent to the extent of its conflict with the Lucky Friday claims and to reinstate Hecla's predecessor's mineral entry and reissue its mineral patent. In 1939, National Copper Mining Co. conveyed the Atlas Area by warranty deed to appellant Atlas.

In the view we take of this appeal, Atlas's only pertinent argument may be summed up as follows:

The Mendy patent had granted besides the land surface all the subsurface area within the vertical downward extensions of its boundaries including mineral rights without regard to apexes of veins or lodes. Because of this, the United States had at the time of issuance of the Lucky Friday mineral patents no legal interest in the surface or subsurface of the Atlas Area and so could grant to Hecla's predecessor no extralateral rights affecting the Atlas Area. Therefore, Hecla could not enter the Atlas Area and extract minerals therefrom even though following veins apexing in Lucky Friday's claims.

■ However, the first and essential premise of this argument is erroneous: the Mendy patent did not—because it could not—grant subsurface mineral rights notwithstanding apexes of the veins or lodes. When the Mendy patent was applied for and issued, Hecla's predecessor already held, in the words of an undisputed conclusion based on undisputed findings, "valid and subsisting unpatented [mining]

claims." An incident of such a claim is of course extralateral rights, i. e.:

"exclusive right of possession and enjoyment of all * * * veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations."[2]

Such pre-existing extralateral rights are superior to subsurface rights purportedly granted by a non-mineral patent, and to the extent of conflict the non-mineral grant is void.[3]

Consequently, assuming that there was no fraud upon the General Land Office in Mendy's application for the non-mineral patent, and further assuming that such patent was regularly issued, nevertheless it could not grant to Mendy subsurface mineral rights that would conflict with the extralateral rights appurtenant to the Lucky Friday claims. By operation of law, Hecla's predecessor had in effect been granted by the United States the right to follow extralaterally veins or lodes apexing in the Lucky Friday claims. That right was vested and could not be disturbed by the mere issuance of a non-mineral patent to Mendy.[4] Thus, the various conveyances and transactions occurring after that, and any questions of fact that may surround them, are immaterial to our decision.

◼ Neither Burke v. Southern Pacific Railway Co.,[5] nor Empire Star Mines Co. v. Grass Valley Bullion Mines,[6] both cited by appellant for the proposition that the Mendy patent granted subsurface mineral rights to the exclusion of the extralateral rights of the Lucky Friday claims notwithstanding the pre-existing valid Lucky Friday claims, are in point in the facts and circumstances of this action. Likewise, because Hecla's interest in the Lucky Friday claims traces to the valid locations, the doctrine of common source of title,[7] which might in other circumstances preclude a collateral attack on Mendy's patent, is not applicable. That Hecla's predecessor joined in an expeditious procedure to expunge Mendy's patent insofar as it conflicted with the Lucky Friday claims does not operate to end the validity of Hecla's predecessor's mining locations.

Judgment affirmed. Costs to respondent.

SMITH, C. J., McFADDEN, J., and FELTON and SCOGGIN, DJJ., concur.

2. 30 U.S.C.A. § 26 (1942).

3. See Noyes v. Mantle, 127 U.S. 348, 8 S.Ct. 1132, 32 L.Ed. 168 (1888); Montgomery v. Gerlinger, 146 Cal.App.2d 650, 304 P.2d 93 (1956); Brown v. Luddy, 121 Cal.App. 494, 9 P.2d 326 (1932); cf. Clipper Mining Co. v. Eli Mining & Land Co., 194 U.S. 220, 24 S.Ct. 632, 48 L.Ed. 944 (1904); Doolan v. Carr, 125 U.S. 618, 8 S.Ct. 1228, 31 L.Ed. 844 (1887); Gwillim v. Donnellan, 115 U.S. 45, 5 S.Ct. 1110, 29 L.Ed. 348 (1885); St. Louis Smelting, Etc., Co. v. Kemp, 104 U.S. 636, 26 L.Ed. 875 (1881); Ames v. Empire Star Mines Co., 17 Cal. 2d 213, 110 P.2d 13 (1941); Van Ness v. Rooney, 160 Cal. 131, 116 P. 392 (1911).

4. See authority cited n. 3, supra.

5. 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 (1914).

6. 99 F.2d 228 (9th Cir. 1938).

7. See generally Annot., 5 A.L.R.3d 375 (1966).